## EDWARDS v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5652. Decided August 15, 1935. (48 P. [2d] 459.)

*N. H. Tanner*, of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., and *F. A. Trottier*, of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an order denying compensation to William Edwards, an employee of the Huntington Canyon Coal Company, who on September 10, 1934, lost an eye by contact with a nail protruding from a post. There is little dispute in the facts. On the 10th day of September, 1934, the defendant Coal Company operated a coal mine in Huntington Canyon. On that day the plaintiff, applicant before the Commission, was an employee of said company. The company is subject to the provisions of the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.) There is no question but that the plain-

tiff lost his eye. The sole question is: Did the accident which caused the loss of the eye arise out of or was it in the course of his employment?

The plaintiff lived in a tent colony upon the company's property at a place designated by the company for the location of such tents. He boarded with his sister, who also resided, as the wife of another employee, in a nearby tent. On September 10, 1934, at 20 minutes to 8 in the evening, he left his sister's tent where he had taken his dinner and ran into a post which was about ten feet in front of his sister's tent. He ran his eye into a protruding nail which resulted in the loss of the eye. The tent pole had evidently held a lean-to which had been removed, the nail being for the purpose of attaching this additional tent. At the time the plaintiff was injured he was on his way to work and intended to pick up his own tools which were by his tent and on the way to his work. The tent colony was 800 to 1,000 feet from the tipple of the mine. Plaintiff was not compelled to live in the tent colony, although it was convenient to have the employees live together where they might be easily reached. The camping grounds designated for the pitching of the tents were the only place where employees were permitted to live while in tents on the company's grounds. This was for sanitary reasons. Water was piped to the tent colony. Until the employees reached the mine tipple the company does not presume to direct their movements. The company did not supply the tent in which the plaintiff lived. In short, it is admitted that the plaintiff was a regular employee; that he was on the company's property at the time the accident happened; that he had just finished his night repast; was on his way to work, and that he intended to pick up his tools as he passed his own tent; and that while on his way to work he was injured in the manner indicated.

Plaintiff first makes the contention that since the accident happened on the company's property while the plaintiff was on his way to work, the accident is compensable. The

rule is not as broad as that. As stated in *Wheeler's Case*, 131 Me. 91, 159 A. 331, the test is not so much ■■ as to whether the employer owns or controls the place where the injury occurred, but rather, whether it happens on the premises where the work is to be performed. Ordinarily where an employee is present at the place of work, even though he has not started work but is there to begin work or is there on the premises on his way to perform his duties, the accident is compensable. This is on the theory that the course of his employment must start somewhere. When he arrives at the place of work, even though he has not started his work, the course of his employment begins. On the other hand, it is a general rule that no compensation is recoverable by an employee who is injured while off the premises on his way to or from his work. See Schneider on Workmen's Compensation (2d Ed.) § 263, p. 745. There are exceptions, one of which will be later discussed.

Where the place of residence is on the company's property, the employer is no more obligated to pay compensation for disability which arises from an accident which occurs at the place of residence than he would be if the accident occurred at the employee's residence off the premises ■■ at least where the employee is not compelled to reside on the premises but does so of his own volition or choice. The employer may have a place of work in one locality and several miles away on his own ground permit his employees to live. And intervening between the place of work and the place of residence may be public or private property, or the property of the employer may be continuous from the place of residence to the place of work. If so continuous, the question of liability would depend entirely upon whether the employee while on his way to work was in the course of his employment. The rule that the course of employment starts when the employee arrives at the place of work—that is, at the company plant—is not necessarily subserved by the fact that the employee is traversing company property while on his way to work. A steel mill may have pasture land over

which its employees may walk to work from their private homes or from company homes. Until they reached the place of work, the course of the employment ordinarily would not begin any more than if they walked through public streets. On the other hand, under certain circumstances the employment may be considered as commencing while they are going to work *over company property* not included in the locus of the plant. If so, it must fall within the rule laid down in the cases of *Cudahy Packing Co.* v. *Industrial Commission,* 60 Utah 161, 207 P. 148, 28 A. L. R. 1394, ordinarily known as the Parramore Case, and *Bountiful Brick Co.* v. *Industrial Commission,* 68 Utah 600, 251 P. 555, 556. Certainly, if a person may be in the course of his employment under certain circumstances while traversing a stranger's property on his way to work, under the rule of these cases, then he equally would be under the rule if he were traversing the employer's property not included in the locus of the plant where such approach so leading over the company's property met the conditions of those rules. In short, where an employee on his way to work has not reached the company's plant, he may, under certain circumstances, be in the course of his employment in the sense meant by the Workmen's Compensation Act, whether traversing company property or some other contiguous property. Therefore, it devolves upon us to see if in this case the plaintiff, while on his way to work, had arrived at the locus of the plant, or whether, if not, he comes in under the rule of the above two cited cases.

The record shows that he had not arrived at the place of work. True, he was on company property, but 800 to 1,000 feet from his place of work, i. e., from the tipple. He was still in the tent colony, 10 feet in front of his sister's tent. The record is silent on what was between the tipple and the tent colony, nor is there any evidence from which it can be shown just how far the locus of the place of work extended. But the inference that he was still in the domain of his residence, and not on the domain of his work area, is given support by the above fact that the acci-

dent happened 10 feet in front of a tent. There is nothing in the evidence which shows that the tent colony was included in what may, for descriptive purposes, be denominated the work messuage. The distance it was from the tipple might bespeak otherwise. Because a man starts for work on the company's property where he lives does not place him within the rule that holds that an employee arriving at the locus of his work is in the course of his employment.

How then stands the matter as to whether he comes under the rule of the above-cited two cases? These are cases where the employees had not yet reached the domain of the company's place of work, but were injured in the direct and immediate approach to said place of work, while ■ on the property of another. As stated before, they would be applicable where the employee was traversing company property but had not reached the locus of his employment if the circumstances were present in such approach as would make the rule applicable. In both of these cases it will be noted that the following elements were present. In the Cudahy Packing Co. Case it was the only method by which the employees could get into the place of work, and in the Bountiful Brick Co. Case it was the natural, practical, customary, convenient, and recognized method of approach or entrance to the company's place of work, to which no objection had been made by the employer. Furthermore, in both cases the employee had to cross railroad tracks in order to use the said approach, and "the employee, in crossing the track at any time, was exposed to a peril which is common to all, but by virtue of his employment he was required to cross the track regularly and continuously, thus being peculiarly and abnormally exposed to a common peril." Further, the approach on which the perils existed and the injuries occured was in the immediate vicinity of the locus of the plant.

The principle which appears to support these two cases is that the approach to the employment involved a peculiar and

abnormal exposure to danger which was annexed as a risk incident to the employment and that therefore the employment contemplated and included in itself such risk to such dangers. In the instant case, the injury occurred, not in the immediate approach to the work, but 800 to 1,000 feet away from the tipple. We do not mean to state that if the only means of approach had inherent dangers which caused the accident, although not in the immediate approach to the work, that it might not come under the rule. We are not required to pass on such a case. The fact is in this case that the accident did not occur in the immediate approach. It was not caused by a danger known to the employer and employee which attended the approach to the place of work which in any way caused the injury. It was by the rather unusual circumstance of having come in contact with a nail. The post with the nail in it cannot be said to be a danger or hazard known and so connected with the place of approach to the work as could be said to be a risk annexed to the employment. At this time it is not necessary and we do not mean to pass upon the point as to whether an accident which occurred through an instrumentality which was not an inherent danger to the place of approach is compensable when the place of approach is the only means available or so convenient and natural as to amount to an extension of the place of work. Such may have been the case—the decision does not disclose—of Sundine's Case, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318.

There is one circumstance in this case which we think unquestionably removes it from the rules announced in the Parramore and Bountiful Brick Co. Cases. In this case there is no evidence which shows that Edwards had even started on any path or route customarily used by the employees, let alone the fact that if there was such a path or route that it met the conditions of these two cases. As far as the record shows, the plaintiff was still practically at his domicile and not moving along any sole or natural, customary, recognized approach to the locus of his work.

In the case at bar, therefore, it is quite apparent, if we give the plaintiff the benefit of every inference from the evidence, that he was, as far as the record reveals, in the same situation as an employee who lived off the company's property, who had not arrived at the place of work, and who was not traversing over a right of way or approach which was inherently dangerous and which was either the sole means of approach or the natural, practical, customary, and convenient approach as compared to all other approaches. It transpires, therefore, that the situation revealed by this record is not within any of the exceptions which make an accident occurring on the way to work compensable.

The order of the Commission denying compensation is therefore affirmed.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.