Stanley BOMSON, Plaintiff-Respondent,

v.

ELECTRA MFG. CO., Defendant-Appellant.

No. 24371.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966.

Kenneth M. Myers, James E. Grier, Brewer & Myers, Kansas City, for appellant.

William M. Austin, James, McFarland & Trimble, North Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for damages growing out of a breach of an oral contract of employment. Plaintiff had a verdict and judgment for $12,500.00 and defendant appeals.

Plaintiff had been manufacturer's representative, for thirty years, for Northeast Tool and Dye Company. He was hired to sell its large accounts, such as Sears Roebuck, Montgomery Ward, Gambles, Coast to Coast, all bicycle factories in the United States, and many others. Most of his accounts issued catalogs, some every two years, some yearly, and some twice a year. Plaintiff would call on his accounts every year, and from time to time, to see that Northeast products were listed in the catalog and, when new catalogs were issued, to see that such products were listed in each new edition. He would procure from the buyers an estimate of the kind and quantity of Northeast products they would require during the following calendar year and advise his employer thereof so that it could be prepared to deliver accordingly. He did not sell directly to customers but was paid a commission ranging from 5% to 7% on the dollar volume of all orders received by Northeast and shipped to any of his accounts. He received no salary and paid all of his travel and other expenses. He received commissions due him for each year that he worked, during the following calendar year. For instance, he would receive commissions for goods shipped in 1958 on orders solicited during 1957.

On November 1, 1958, defendant acquired ownership and control of Northeast. A few days later Mr. Sealey, who was sales manager for defendant, told plaintiff that defendant would like for him to continue in its employ on the same terms and conditions as those existing when he worked for Northeast. Plaintiff told Mr. Sealey that he only wanted to work for one more year and that, then, he would like to retire. Plaintiff stated that they agreed on those conditions. Plaintiff stated that Sealey agreed that he would be paid commissions on sales to be made in 1959. However, there was some conversation between Sealey and plaintiff later, when they started a trip to see customers, to the effect that a mutually satisfactory agreement would be reached. The evidence on this question was not clear but there was testimony from which the jury could have found that such was the understanding between Sealey and plaintiff. Plaintiff stated that, the week before Christmas, 1958, Sealey and he were in Chicago and met with Electra's president in his room; that they talked about arrangements to be made for the following year; that plaintiff told them that he only wanted to work one more year, and then retire; that they agreed on a contract providing for a salary and expenses for his services in 1959; that plaintiff returned to Kansas City where, on December 23rd, he was called on the telephone by Mr. Sealey; that they discussed a contract which defend

ant had prepared for plaintiff's execution; that the contract provided for optional cancellation upon thirty days notice; that plaintiff refused to execute it if that clause were not stricken, but that defendant refused to do so; that he, therefore, refused to execute the contract and defendant "terminated" his employment; that he has never been paid anything on account of merchandise shipped by defendant to plaintiff's accounts in 1959.

Mr. Sealey testified in behalf of defendant. His testimony was to the effect that defendant wished to retain the services of plaintiff so that he could contact his accounts and retain them for the new owner of Northeast. Plaintiff stated that defendant wanted him to remain in its employ so that he might introduce defendant's salesmen to plaintiff's numerous accounts and buyers; that he was to tell the buyers that defendant had taken over control of Northeast but that he, plaintiff, would continue to call on them and service their accounts.

Sometime after November 8th, 1958, plaintiff and Mr. Sealey made two trips to visit buyers representing plaintiff's accounts. Plaintiff stated that each trip lasted about a week; that they called on buyers representing most of Northeast's bicycle accounts, and were in New York, Illinois, Evanston and Chicago. Plaintiff stated that the majority of them had their commitments in for the year 1959; that all of his accounts for all merchandise produced and sold by Northeast totalled from five hundred to seven hundred; that his personal out-of-pocket expense on these trips was from five hundred to six hundred dollars.

We have stated the facts in evidence from a standpoint most favorable to plaintiff. Mr. Sealey was the only witness for defendant. His testimony varied to some extent, but not completely, from that of plaintiff. The jury could have believed plaintiff's version, as it apparently did. Mr. Peterson, the real owner of Northeast, testified for plaintiff and substantiated plaintiff's testimony.

The nature and terms of plaintiff's employment with Northeast for many years, was not in dispute. He was Northeast's representative in the solicitation of sales from several hundred large buyers over a very large territory. He received no salary and paid all of his own expenses. He received a commission of from five to seven percent on the dollar value of all merchandise shipped to these accounts. His commission was paid during the calendar year that the goods were shipped although plaintiff had solicited the business during the preceding calendar year.

Defendant does not say that it was misinformed as to the terms and conditions of plaintiff's employment. The jury could have reasonably believed, from the testimony of plaintiff that defendant's president, Mr. Groth, (who did not testify) and its vice-president and sales manager, Mr. Sealey, that defendant was fully informed as to these facts; and plaintiff's testimony was to the effect that Sealey asked him to "continue" in its employment on those same terms and conditions. Sealey admitted in his testimony that defendant wanted to retain plaintiff's services. Plaintiff agreed to Sealey's proposal and they made two extensive trips to visit buyers in December, 1958, although most of the buyers' commitments for 1959 were already "in". Obviously, plaintiff could not profit from any business produced on these trips unless he was to receive commissions in 1959 on business produced in 1958.

However, defendant's president and plaintiff agreed, in Chicago, on a contract for 1959 whereby plaintiff would receive a salary and expenses for that year. But when plaintiff was requested to sign a new contract it provided for optional cancellation on thirty days notice. Plaintiff refused to sign it and defendant terminated his employment.

True, the verbal contract, when made, was to operate in the future; but

plaintiff, in good faith, entered into its performance at the request of defendant and spent two weeks in travel and expended substantial sums. The contract is valid and enforceable. Burg v. Bonn Terre Foundry Co., Mo.App., 354 S.W.2d 303. In the Burg case the contract provided that if employee should cancel the contract he should be paid commissions only on sales made up until date of cancellation, but if the company should cancel, commissions would continue to be paid until a satisfactory arrangement should be made between the parties. The court enforced the contract as to sales delivered after cancellation. In short, it enforced the contract as made. In the case at bar the contract was that plaintiff should be paid commissions on all orders received and shipped to plaintiff's customers during the calendar year of 1959. Defendant breached the contract and is liable in damages.

The court gave the following instructions for plaintiff:

### "INSTRUCTION NO. TWO"

"Your verdict must be for plaintiff if you believe

FIRST, plaintiff was employed prior to November 1, 1958, by Northeast Tool & Dye Works, Inc., under an agreement that plaintiff would be compensated for his services performed.

SECOND, the nature of plaintiff's services were such that he was entitled to compensation for all orders received on his accounts during the year following the year in which his services were performed.

THIRD, on or about November 1, 1958, defendant employed plaintiff to perform services as a continuation of and on the same basis as plaintiff's previous work for Northeast Tool & Dye Works, Inc., and agreed to pay plaintiff a commission on all orders received by defendant from plaintiff's accounts during the year 1959.

FOURTH, sales were made during the year 1959 from defendant to plaintiff's accounts and that plaintiff was not paid a commission therefor".

### "INSTRUCTION NO. THREE"

"If you find in favor of plaintiff, then you must award such sum as you believe will fairly and justly compensate him for damages you believe he sustained as a direct result of defendant's failure to pay plaintiff commissions at the rate of five (5) percent on sales to plaintiff's accounts during the year 1959."

Defendant complains that plaintiff failed to prove any damages. It was incumbent on plaintiff to prove his damages. Weaver v. Jordan, Mo.App., 362 S.W.2d 66, 75. Plaintiff's contract was to the effect that he should be paid commissions of from five to seven percent on all sales made and shipped to his accounts during the year 1959. His evidence was to the effect that he had solicited and serviced these accounts during the year 1958. He proved the dollar amount of sales made by defendant to plaintiff's accounts during the year 1959, and that he had been paid nothing therefor. This was sufficient proof to support the verdict. City of Kennett v. Katz Construction Company, 273 Mo. 279, 202 S.W. 558, 562.

Defendant complains that instruction No. 2, is erroneous because plaintiff was not required thereby to render to defendant any services. It was not in dispute that plaintiff serviced his accounts for Northeast in 1958 and was to be paid commissions on all orders therefrom received in 1959. Plaintiff was employed to continue in the service of defendant on that same basis. He was not required thereby to render any services to defendant in connection with the orders to be received in 1959. Services to be rendered in 1959 would relate to business received by defendant in 1960. The instruction properly submitted the ultimate facts required to establish plaintiff's right to recover. It did not mislead the jury. It is a sufficient compliance with court rule 70.01, V.A.M.R.

Defendant claims error because the trial court excluded from evidence the contract of sale executed by Northeast and defendant It claims that the contract contains no clause binding defendant to continue plaintiff in defendant's employment on any terms. The document was and is irrelevant to any issue in this case. Plaintiff and his counsel stated, in open court, that they did not rely on that sales contract but relied exclusively on an oral contract entered into between plaintiff and defendant eight days after the sale was consummated. The point is without merit.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.