Clester T. KUNCE, Appellant,

v.

JUNGE BAKING COMPANY and Liberty Mutual Insurance Company, Respondents.

No. 8788.

Springfield Court of Appeals.

Missouri.

Oct. 3, 1968.

Richard M. Webster of Myers, Webster & Perry, Webb City, for appellant.

Herbert Van Fleet, of Blanchard, Van Fleet & Robertson, Joplin, for respondents.

TITUS, Judge.

Clester T. Kunce, a worker for twenty years at the Junge Baking Company in Joplin, Missouri, fell and was injured when his feet became entangled in a wire hoop during the course of an off-the-premises break within the paid hours of his employment. Thereafter he successively secured favorable awards from The Division of Workmen's Compensation and The Industrial Commission of Missouri,[1] but now appeals from the judgment of the Circuit Court of Jasper County which reversed the final award. Except for exhibits of medical bills, physicians' reports and a photograph of the accident scene, the evidence is wholly composed of the employee's testimony.

The bakery building is bounded on the east by Main Street and on the west by a "black-topped" alley, both north-south public trafficways. The rear or west wall of the structure is contiguous with the east alley line save for a small section at the north end which is recessed (about three feet by our estimate) away from or east of the alley. This indented area, described as "being the property of Junge Baking Company" and "wide enough that you can walk on it real good," is the accident site, and consists of a "cement runway" or single lane driveway extending eastward from the alley into the "old company garage." This portion of the bakery, as we understand, is no longer used as a garage but either houses an oven or affords access to one. The driveway is situate about fifty feet north of the southwest corner of the building. The garage-type door at the runway does not serve as an employees' entrance into the bakery, it was closed at the time of the accident, and claimant had no

intention of using it as a way or path into the building when he fell.

A loading dock extending east from the alley runs across the south side of the bakery, and a doorway in the south wall of the building leads from the dock into the shipping room where Mr. Kunce was employed. As he did on the date of the accident, claimant usually drove his personal automobile to work and parked it south of and off bakery property. To gain the shipping room, Mr. Kunce walked north in the alley to the southwest corner of the building, where he turned east to travel upon the loading dock to the south doorway and thence north into the building. This route was followed in reverse when the employee departed for home at the end of a shift.

Two buildings adjacent to and north of the bakery separate it from 18th Street, the first east-west thoroughfare north thereof. To the west or rear of these buildings and east of the alley is a graveled parking section used by persons not associated with the bakery. The "cement runway" extending from the alley into the "old company garage," supra, is located just south of the southwest corner of the graveled parking area.

Claimant's specific job was to assist in removing wrapped bread from the end of a conveyor belt in the shipping room, place it into trays, and stack the trays for convenient placement onto trucks off the loading dock. On the accident date, Sunday, December 19, 1965, Mr. Kunce arrived at the bakery at 4 a. m. intending to work a continuous 9 or 9½ hour shift. His co-workers that day were Messrs. Hewitt, Moon and Noble, the latter being denominated as "our relief man." The relief man arrived an hour after the others, "and the duties of Mr. Noble is to relieve us three men [in turns], and then he takes a break."

---

1. Each award aggregated $6,036.86 computed as follows: $676 for temporary total disability, $4,700 for permanent partial disability to the body as a whole, $560.86 for medical aid not furnished by the employer and insurer, and $100 disfigurement allowance.

It is "the company policy" that once an employee checks in for work at the beginning of a shift, he remains continuously "on the clock" or on company time "and we don't punch out until time to go home" at the end of the shift. Bakery employees do not check out for lunch or breaks for other purposes, they are not limited as to what they may do or where they may go during a break, and the only restriction as to time taken for a break is that it be reasonable. "If you wanted to * * * you could go home and get something, or go home and get a cup of coffee, or do whatever you wanted to do [on a break], so long as you just spent a reasonable time." For illustration, Mr. Kunce recounted occasions prior to the accident when, on his breaks, he left the bakery to go to a particular hardware store to make personal purchases or to Mays Drug Store to buy cigarettes. A canteen or coffee bar, equipped with a cigarette machine, was provided on bakery premises but, at least on the day of the accident, "they didn't have Chesterfield cigarets * * * and I smoke Chesterfield cigarets."

Before the fateful break occurred near 10 a. m., Mr. Kunce had taken other breaks without leaving the bakery premises. Regarding the 10 o'clock break the claimant testified: "I was out of cigarets * * * I first went to the restroom and then I went out to buy me two packages of cigarets." It was entirely Mr. Kunce's decision to undertake this excursion, no one at the bakery directed or requested it, and apparently only Mr. Kunce was aware of where he was going or what he intended to do. He departed the bakery via the south door, turned west onto the loading dock, and followed it into the alley where he walked north to 18th Street. There he traveled east to Main and then north two blocks to 16th and Main, where he entered Mays Drug Store and purchased two packages of cigarettes and two packages of tinsel for "a Christmas tree at home." En route back to work, Mr. Kunce went south on Main and turned west at 18th Street, cut-

ting across the graveled parking area to the alley. Although there is no evidence any traffic was in the alley, "for safety reasons" claimant walked southward close to the building line and onto the "cement runway." It was while he was on or traversing the runway that Mr. Kunce fell and was injured after having been tripped by the hoop. Upon regaining his feet, claimant resumed his intended route, and entered the bakery by the south door to report the occurrence before departing for home and the hospital. The origin and ownership of the hoop is not known.

The "Findings of Fact and Rulings of Law," expressed by the referee in conjunction with his award, noted, "All the evidence * * * prove[s] that the accident occurred on premises owned * * * by the employer. In my view, this is a typical 'going to and from work' case * * *. I further find that at the time of the accident the employee * * * had been on a break which by practice had become a 'fixture' of the employment." Bolstered by such findings, his conclusion the accident arose out of and in the course of employment was inescapable. Being in agreement with the referee's award and obviously feeling its form satisfied the requirements of V.A.M.S. § 286.090, the Industrial Commission upon review simply affirmed and adopted that decision. In explanation of its judgment, the circuit court in a memorandum opinion stated, inter alia: "* * * the employee was on a mission solely of his own choosing [that] had no connection with his employment. * * * Although he was on the employer's premises when the accident happened, his presence [thereon] was not incident to his employment and was not necessary to any phase of his employment. That is, entering or leaving the plant. The mere fact that employee was on the employer's premises does not entitle him to an award. His presence must be necessary or incidental to his employment. * * * The Court * * * finds that the award * * * is not supported by the law

and the evidence and the award is reversed and judgment entered for the employer."

■ Claimant urges the circuit court erred in denying compensation because (1) "the act of entering or leaving the place of employment is incidental to employment and the test as to whether or not the act is within the scope of employment is whether or not the employee was actually on the premises," and (2) a "rest or recreation break, when approved by the employer, is incidental to employment." We fear this is an oversimplification of the actual issues involved, for accidental injuries incurred by employees during working hours or periods for which they are compensated are not compensable merely because they occur on premises owned by or under the control of their employers.[2] It is only such injuries as arise *both*[3] "out of *and* in the course of employment" that are compensable.[4] (Emphasis is ours.) Mr. Kunce, of course, had the burden of bringing himself within the provisions of the workmen's compensation act,[5] which includes the burden of proving his injuries resulted from an accident "arising out of and in the course of his employment." Leone v. American Can Company, Mo.App., 413 S. W.2d 558, 561(1). The facts here are not in dispute. Therefore, whether the claimant's injuries arose out of and in the course of employment is a question of law[6] "and the Commission's determination thereof is not binding on the reviewing court." Lawson v. Lawson, Mo.App., 415 S.W.2d 313, 316(3).

■ Hazards encountered by employees while going to and from work are not, as a general rule, considered incidental to their employment, and injuries resulting from such hazards are not compensable because they do not arise out of and in the course of their employment. Downs v. Durbin Corporation, Mo.App., 416 S.W.2d 242, 246(5). However, this rule, as it is with all, has exceptions, one of which pertains to employees going to and from work upon the employer's premises. Garrison v. United States Cartridge Co., Mo.App., 197 S.W.2d 675, 676(1); 1 Larson's Workmen's Compensation Law, § 15.11, pp. 195–197. It is reasoned the benefits of The Workmen's Compensation Law should not be limited to injuries which result while the "employee is engaged solely, strictly and only in activities specifically assigned to him" [Leone v. American Can Company, supra, 413 S.W.2d at 563 (7)], and that a reasonable and necessary part of the employment includes use of "a way over the employer's premises," designated by the express or implied consent of the employer, in passing to and from the place where the work is to be performed. Bountiful Brick Co. v. Giles, 276 U.S. 154, 158, 48 S.Ct. 221, 72 L.Ed. 507, 509, 66 A.L.R. 1402. The exact situa-

2. E. g.: Smith v. Lannert, Mo.App., 429 S.W.2d 8; Lathrop v. Tobin-Hamilton Shoe Manufacturing Co., Mo.App., 402 S.W.2d 16; Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142 (banc), 233 S.W.2d 725, overruling 27 S.W.2d 747.

3. Bauer v. Independent Stave Company, Mo.App., 417 S.W.2d 693, 696(2); Ray v. Great Western Stage & Equip. Co., Mo.App., 413 S.W.2d 576, 579(1); Kammeyer v. Board of Education, Mo.App., 393 S.W.2d 122, 127(4).

4. Wheaton v. Reiser Company, Mo.App., 419 S.W.2d 497, 499(3); V.A.M.S. §§ 287.020, subd. 6, and 287.120, subd. 1.

5. Brown v. Boulevard Village, Incorporated, Mo.App., 422 S.W.2d 389, 391(2);

Meilves v. Morris, Mo., 422 S.W.2d 335, 339(5); Johnson v. Medlock, Mo.App., 420 S.W.2d 57, 59(3); Raef v. Stock-Hartis, Inc., Mo.App., 416 S.W.2d 201, 204(1).

6. Daniels v. Krey Packing Company, Mo., 346 S.W.2d 78, 81(2); May v. Ozark Central Telephone Co., Mo.App., 272 S.W. 2d 845, 848(2); Lupton v. Glenn's Oyster House, Mo.App., 266 S.W.2d 53, 55(1); McFarland v. St. Louis Car Co., Mo. App., 262 S.W.2d 344, 346(1); Sawtell v. Stern Bros. & Co., 226 Mo.App. 485, 489(1), 44 S.W.2d 264, 267(1); Metting v. Lehr Const. Co., 225 Mo.App. 1152, 1154–1155(1), 32 S.W.2d 121, 123(1).

tion which faces us here bears little or no resemblance to facts concerned in any case to which we have been directed or have discovered by independent research. Consequently, we must heed the admonition ingeminated by almost every opinion that each case must be decided upon its own particular facts (Elliott v. Darby, Mo. App., 382 S.W.2d 70, 73), and attend to the application of germane principles rather than pursue the frequently misleading and frustrating practice of attempting to group compensation problems by fact categories.

■ As applied to employees returning to or departing from their work (for whatever reason), the going to and from work rule permits recovery of workmen's compensation benefits provided (a) the injury-producing accident occurs on premises which are owned or controlled by the employer, or on premises which are not actually owned or controlled by the employer but which have been so appropriated by the employer or so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practicable intents and purposes, a part and parcel of the employer's premises and operation; and (b) if that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workmen to get to and depart from their places of labor and is being used for such purpose at the time of the injury.[7] As said in Wheeler's Case, 131 Me. 91, 159 A. 331, 332(4), "The test is not so much whether the employer owns or controls the place where the injury occurs, but rather whether it happens * *

on the approaches to the premises, where the work is to be performed. * * * [T]he important consideration is not that the [employer owned and controlled the property where claimant fell], but rather we must determine the purpose for which that [property] was maintained." In Edwards v. Industrial Commission of Utah, 87 Utah 127, 48 P.2d 459, compensation was denied an employee who, while en route to work, lost an eye by contact with a nail protruding from a post on his employer's property. At page 462 the court said: "In this case there is no evidence which shows that Edwards had even started on any path or route customarily used by employees * * *. As far as the record shows, the plaintiff was * * * not moving along any * * * customary, recognized approach to the locus of his work." Also, see Gallman v. Springs Mills, 201 S.C. 257, 22 S.E.2d 715; 99 C.J.S. Workmen's Compensation § 238 at p. 850.

■ Granted that Mr. Kunce's accident occurred on "the property of the Junge Baking Company," still there is no evidence the "cement runway" or the "old company garage" was ever maintained for the purpose of providing employees a means of ingress to and egress from their places of work. Likewise, nothing in the record indicates the driveway was designed for or used by employees as a part of any path or way to or from the bakery. In fact, the claimant's testimony shows this part of his employer's property was not an employees' entrance, that the garage door was closed, and that he had no intention of using it as a way or route over bakery premises in reaching the shipping

---

7. Fielder v. Production Credit Association, Mo.App., 429 S.W.2d 307, 315(15); Lawson v. Village of Hazelwood, Mo.App., 356 S.W.2d 539, 541–542(2, 3); Ott v. Consolidated Underwriters, Mo.App., 311 S.W.2d 52, 55–56(2); Garrison v. United States Cartridge Co., supra, 197 S.W.2d at 676(1); Murphy v. Wells-Lamont-Smith Corporation, Mo.App., 155 S.W.2d 284, 289(3); Watson v. Pitcairn, Mo. App., 139 S.W.2d 552; Metting v. Lehr Const. Co., supra, 225 Mo.App. 1152, 32 S.W.2d 121; Chmelik v. Vana, 31 Ill.2d 272, 201 N.E.2d 434, 439(14); Biggs v. Farnsworth, 336 Ill.App. 417, 84 N.E. 2d 330, 331(3); Schank v. Glenn L. Martin-Nebraska Co., 147 Neb. 385, 23 N.W. 2d 557, 559; California Cas. Indemnity Exch. v. Industrial Acc. Com'n, 21 Cal. 2d 751, 135 P.2d 158, 163(9); Fenton v. Margate Bridge Co., 24 N.J.Super. 450, 94 A.2d 848, 851(6).

room where he was employed. In each of the Missouri cases cited in footnote 7, supra, the claimant, while going to or from work on the employer's premises, was using a route intended for that purpose when injured. In the instant case, Mr. Kunce's purpose in traversing the runway was not to follow it as part of a recognized entrance into the bakery. His employment of the runway was no different than his use of the public streets, alleys and sidewalks in returning to the building.

We are especially referred by claimant to Murphy v. Wells-Lamont-Smith Corporation, supra, 155 S.W.2d 284, and DeCicco v. Anderson, 99 N.J.Super. 243, 239 A.2d 259. In Murphy the claimant was struck by a truck while she was traversing a "drive-in and drive-out" runway over a public sidewalk which the employer had made "a part of its own premises for its own use and benefit." Mrs. Murphy was not only on her employer's premises when injured, but was also on "the only direct and practicable route [used] to enter the factory * * * which was the usual and customary route the employee had used for many years to enter the factory." The plaintiff in De-Cicco was a pedestrian on a parking lot owned by her employer when struck by an automobile driven by a fellow worker. The parking lot was used by employees, those arriving both in cars and on foot, as part of the way to get to and from their places of work, although the lot was physically separated from the plant and employees were required to reenter "the public domain" before reaching the plant. Claimant here asseverates that Murphy and DeCicco parallel the instant case because Mr. Kunce, similar to the employees in those causes, after leaving the runway would reenter the public alley and travel it some fifty feet before arriving at the entrance to the bakery. This ignores the fact that the "drive-in and drive-out" runway in Murphy and the parking lot in DeCicco were part of the "usual and customary" route employed by workmen on their employer's premises in going to and from their places

of employment. The "cement runway" in this matter was not a customary or permitted route nor the usual and customary way of going to and from work at the bakery. Neither did it comprise any part of a path or route on bakery premises intended for or used by employees to get to and depart from their assigned places of employment. There appears no logical or distinct connection between the conditions under which Mr. Kunce was usually and regularly required or permitted to approach and leave the bakery and the reason or cause for his use of the "cement runway" when injured. We cannot agree "this is a typical 'going to and from work' case," for the rule may not be properly invoked or applied under the factual situation with which we are confronted.

Courts have hopefully devised and variably apply a farrago of special doctrines and rules in an effort to cope with the endless variety of factual situations which continually deluge them in workmen's compensation cases. The medley is compounded by statutory dissimilarities and variant interpretations among the different jurisdictions, so that while foreign authority often proves helpful it is not necessarily controlling. V.A.M.S. § 287.120, subd. 1, specifies "the employer shall be liable * * * to furnish compensation * * * for personal injury * * * by accident arising out of and in the course of * * * employment," while V.A.M.S. § 287.020, subd. 6, provides that "without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment', it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service." The latter statute has been construed as "one of exclusion rather than one of inclusion * * *. The subsection excludes injuries to a workman except when *either* the workman is performing his services in, on or about the employer's premises,

*or* when the workman is not on the premises but is engaged in performing his services for the employer. In either event when injured he must be engaged in the performance of his services for the employer." Hawley v. Eddy Brothers, Inc., Mo.App., 371 S.W.2d 338, 341(2, 3). "An injury arises 'out of' the employment when there is a causal connection between the conditions under which the work is to be performed and the resulting injury, and it arises 'in the course of' the employment when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." Lampkin v. Harzfeld's, Mo., 407 S.W.2d 894, 897(3, 4).

■ " 'Incidental' is a wanton word; it accommodates the writer's interpretation on one occasion and solicits the reader's on another." Liebman v. Colonial Baking Company, Mo.App., 391 S.W.2d 948, 952. None the less, what is "incidental" to employment or "incidental" to the employee reasonably fulfilling the duties of his employment, has become more or less crystalized in some areas for universal understanding. Broadly speaking, risks and acts are incidental to employment not merely because they are an incident of the employment but because they constitute an inherent and component element of it. Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind.App. 545, 116 N.E. 330, 332. It cannot be denied it is most necessary, and thus incidental to the employment, that an employee travel to and from the entrance at his place of labor on his employer's premises to get to and from his assigned place of employment. Consequently, under the previously noted "going to and from work" rule, if the

accident occurs on the employer's premises and upon a usual and customary path used for going to and from work, it is said the accident arises out of and in the course of employment.[8] The inevitable acts of human beings in ministering to their personal comfort while at work, such as seeking warmth and shelter, heeding a call of nature, satisfying thirst and hunger, washing, resting or sleeping, and preparing to begin or quit work, are held to be incidental to the employment under the personal comfort doctrine.[9] Also, if there are known, encouraged or condoned settled practices carried on by employees upon the employer's premises which become inherent and component elements of the employment, such practices may be said to have become incidental to the employment and within the course of the employment. Wamhoff v. Wagner Electric Corporation, 354 Mo. 711, 718–719, 190 S.W.2d 915, 919(8–9), 161 A.L.R. 1454, 1460; Conklin v. Kansas City Public Service Co., 226 Mo.App. 309, 41 S.W.2d 608, 614(3, 4). These conclusions are justified because as long as the employee is on the employer's premises or where his services require his presence, he is subject to all the environmental hazards associated with the employment and to the employer's right to control and direct. In addition, if the employee is engaged in a course of conduct inherent in and expected of persons while assuaging their physical needs at work, or is participating in settled and approved practices, his acts do not constitute an actual interruption of the employment and bestow some benefit upon the employer although at the same time giving personal comfort to the employee.

■ On the other hand, there may be provisions, expressed or implied, in employment contracts which are "incidents" or

---

8. See cases cited in footnote 7, supra.

9. Jones v. Bendix Corporation, Mo.App., 407 S.W.2d 650, 652–653; Thompson v. Otis Elevator Company, Mo.App., 324 S.W.2d 755, 758–759(5–6); Blair v. Armour and Company, Mo.App., 306 S.W.2d 84, 88(4); Culberson v. Daniel Hamm Drayage Company, Mo., 286 S.W.2d 813, 816–818(3–8); Schultz v. Moerschel Products Co., Mo.App., 142 S.W.2d 106, 110 (6); 1 Larson's Workmen's Compensation Law, § 21.10, pp. 299–302, and § 21.60, pp. 322–324; 99 C.J.S. Workmen's Compensation § 220, pp. 722–730; 58 Am. Jur., Workmen's Compensation, § 236, pp. 742–743.

"fixtures" of the employment, yet the employee's exercise of the rights granted or provided by such incidents or fixtures will not constitute the doing of something incidental to the work he is hired to perform. Paid vacations and paid sick leaves may be incidents or fixtures of the employment and can conceivably be of mutual benefit to the employer and employee, but events transpiring during the duration thereof do not arise out of or in the course of employment because there is an interruption or suspension of the employment and of the right of control by the employer, and also because the hazards which may be encountered are not associated with the work. The same is true where the employer, without deduction for the time consumed away from the job, permits an employee to leave the work premises to go wherever and do whatever he chooses with no limitation on the period except that it be reasonable. Contrary to the rulings in some other states, "Our cases have recognized the control factor as important in ruling the existence of an employer-employee relationship under the Workmen's Compensation Law" [Lamar v. Ford Motor Company, Mo., 409 S.W.2d 100, 104(1)], and before an accident will be compensable the relationship of employer-employee must exist at the time of the injury. Griffin v. Sinks Ford Sales, Mo. App., 413 S.W.2d 856, 858(1).

■ As already observed, it was wholly Mr. Kunce's decision to undertake the venture to the drug store to obtain cigarettes and Christmas tree tinsel. He was not engaged in any special employment or task on the trip nor performing any services for his employer. The journey was not a part, either regular or incidental, of his employment, and the services for which he was hired did not require his presence at the place where he fell. At the time of the accident claimant was simply on his own, partaking of a gratuity suffered and allowed by his employer with no loss in pay. When claimant exercised the right to take an off-the-premises break with no restrictions as to where he could go or what he could do, his departure from the bakery on such an occasion constituted a definite and real lacuna in the employment and the employer's right to control and direct. During this hiatus what claimant did or where he went was strictly of his own selection and, to paraphrase the statute, where he went on the particular break in question was not in, or about the employer's premises where his duties were to be performed or where his presence was required as a part of such duties. Claimant was not in the course of his employment when he left the bakery on this personal excursion and, because neither the origin nor ownership of the hoop which caused the accident is attributable to either the employer or its business, it cannot be said claimant's encounter therewith has a distinct "arising out of" or logical causal connection between the employment and the occurrence of the injury.

The judgment of the circuit court is affirmed.

HOGAN, P. J., and STONE, J., concur.