Ben **CHERRY**, Claimant/Appellant,

v.

**POWDERED COATINGS,**
**Employer/Respondent,**

and

**Insurance Company of North America,**
**Insurer/Respondent.**

No. **66462.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 16, 1995.

Sheldon Weinstein, St. Louis, for appellant.

Cara L. Wilkens, Elizabeth Hess, St. Louis, for respondent.

CRAHAN, Judge.

Ben Cherry ("Claimant") appeals the order of the Labor and Industrial Relations Commission ("Commission") adopting the award of the Administrative Law Judge ("ALJ") which denied compensation to Claimant based on a finding he did not sustain an accidental injury arising out of and in the course of his employment. We reverse and remand.

The controlling facts are essentially undisputed. On the date at issue, Claimant worked for Powdered Coatings as a hanger

and packer. Powdered Coatings is situated in an industrial complex within the City of St. Louis. It leases space from Guarantee Electric Company, another business within the complex. The complex itself is bounded by Morganford Road to the west and Bent Avenue to the east. A fence surrounds the complex. Entry is available through two gates, one off Morganford Road and the other off Bent Avenue. Both entrances lead into the general parking area, which is surrounded by buildings and forms the center of the complex. The entrance and alleyway off Morganford runs behind the building leased by Powdered Coatings and extends into the general parking area. Powdered Coatings is to the south of the alleyway off Morganford and there is a smaller parking area adjacent to its building. Although employees of Powdered Coatings are free to use either entrance, employees had been instructed to park in that area, parallel to the building, and generally used the Morganford entrance. The president of Powdered Coatings was unaware until he reviewed the lease just prior to the hearing that the lease agreement also allowed employees of Powdered Coatings to use the general parking area. Persons using that lot could either proceed east further down the alley or enter the lot directly through the Bent Avenue gate.

Employees of Guarantee Electric generally park on the south side of the general parking area. It is marked on the ground "reserved" and has numbered stalls. Spaces on the north side of the parking area are not labeled "reserved." The lease specified that Guarantee Electric was responsible for proper maintenance of the parking areas.

On February 4, 1991, Claimant was working his scheduled hours at Powdered Coatings. Around noon he was permitted to take his lunch break. Lunch breaks are not regularly scheduled and are generally unpaid. On that day, Claimant left the premises on a motor scooter to buy potato chips to eat with his lunch. When he returned through the entrance off Morganford a short time later, a delivery truck was blocking the parking spaces near the building that employees of

Powdered Coatings had been instructed to use. Claimant continued in an easterly direction past the truck and into the main parking area, intending to wait for the truck to move. He drove east toward the building owned by Guarantee Electric and attempted to turn the motor scooter around. As he drove through the main parking area, the front wheel of his motor scooter struck a pothole.

Claimant was thrown off the scooter and landed on the ground injuring his knees. Claimant reported the incident to his supervisor at Powdered Coatings and later that day was taken to the emergency room where his right leg was placed in a cast. After the accident, Claimant suffered major knee problems. He was diagnosed and treated for a fractured tibial plateau in his right knee, with a large joint effusion.

Claimant filed a claim for compensation with the Division of Workers' Compensation. The ALJ found the accident did not arise out of and in the course of employment and Claimant was therefore not entitled to recover.[1] Claimant timely appealed the ALJ's decision to the Commission, which adopted the ALJ's award and denied compensation. This appeal followed.

■ Claimant's sole point on appeal asserts the Commission erred in finding Claimant's injury did not arise out of and in the course of his employment. Where the facts are not in dispute, the question of whether an accident arose out of and in the course of employment is a matter of law. *Davis v. McDonnell Douglas,* 868 S.W.2d 170, 171 (Mo.App.1994). As such, we are not bound by the decision of the Commission. *Id.* Because there is no factual dispute here at issue, we must determine whether the Commission was correct in its application of the law.

■ It is well-established that Workers' Compensation Law was enacted to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment. *Bybee v. Ozark Airlines,* 706 S.W.2d 570, 572 (Mo.

---

1. Based on the testimony presented, the ALJ found temporary total disability at 12⅔ weeks and permanent injury at 40% permanent partial disability of the right knee.

App.1986). The law in this context is to be broadly and liberally construed and is intended to extend its benefits to the largest possible class. *Id.* Any doubt as to compensability is to be resolved in favor of the injured employee. *Id.*

The ALJ's award, adopted by the Commission majority, denied liability on the basis of a perceived "rule" set forth in *Kunce v. Junge Baking Co.*, 432 S.W.2d 602 (Mo.App. 1968), that an employee who exercises the right to take an off-premises break with no restrictions as to where he could go or what he could do thereby departs his employment and the employer's right to control and direct his activities, rendering any injury suffered outside the course and scope of employment. Reasoning that "there was no evidence that employer took any steps to exercise control over the parking lot in the area where the claimant was injured and the complainant was still on his unpaid lunch break," the Commission found that this perceived "rule" of *Kunce* was applicable and that Claimant therefore failed to establish that the injury occurred out of and in the course of employment. We disagree.

The Commission's reasoning confuses the employer's right to control the *employee* with its control over the *premises* where the injury occurs. This is not a premises liability case, nor are the principles applicable in such cases relevant in a worker's compensation action. Although there is dicta in *Kunce* purporting to set forth certain general principles applicable to injuries occurring on premises owned or controlled by the employer, such ownership or control was plainly not dispositive of the issue before the court because compensation was denied even though it was undisputed that the injury occurred on the employer's premises. *Id.* at 607. Indeed, the court quoted with approval a case from Maine for the proposition that the test is *not* the employer's ownership or control of the place of injury but whether it happened on the approaches to the premise where the work was to be performed. *Id., citing Wheeler's Case*, 131 Me. 91, 159 A. 331, 332 (1932).[2] Rather, the basis for denial of compensation in *Kunce* was that the employee was injured in an area where neither his employment duties nor ingress to the plant upon completion of his errand would have required him to be. *Kunce*, 432 S.W.2d at 607–08.

■ Contrary to the Commission's analysis, we find no support in *Kunce* or any other authorities for the proposition that the employer must own or control the place of injury. *See, e.g., Mann v. City of Pacific*, 860 S.W.2d 12 (Mo.App.1993) (injury while refueling personal vehicle en route back to police station held compensable). Rather, appellate decisions in this area have consistently held that an injury arises "out of" employment when there is a causal connection between the conditions under which the work is to be performed and the resulting injury, and the injury arises "in the course of" employment when it occurs within the period of employment at a place *where the employee may reasonably be* and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. *Bell v. Arthur's Fashions, Inc.*, 858 S.W.2d 760, 763 (Mo.App.1993) (emphasis added). The two clauses require two separate inquiries and both must be met to recover compensation. *Ford v. Bi–State Development Agency*, 677 S.W.2d 899, 901 (Mo.App. 1984).

■ An injury arises out of employment if it is a natural and reasonable incident thereof. *Bybee*, 706 S.W.2d at 572. Acts that are reasonably incidental to employee's work and are for the employer's benefit are said to arise out of and in the course of employment. *Id.*

■ An employee who, within the time and space limits of his employment, engages

---

2. Although not dispositive of the issue presented, we note that the record also does not support the ALJ's characterization of the employer's control over the parking area where the injury occurred. Powdered Coatings' lease with Guarantee Electric, admitted into evidence, expressly provided that Powdered Coatings' employees could use the main parking area where the injury occurred and gave Powdered Coatings a contractual right to require Guarantee Electric to maintain it in good condition. Although Powdered Coatings apparently never exercised these rights, we cannot agree that its failure to do so means it lacked "control" over the place of injury.

in acts which minister to personal comfort does not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. *Ford*, 677 S.W.2d at 902. "A pause by an employee within the reasonable limits of time and place to satisfy the needs of the body for food or drink, or even for refreshment, may well be considered as reasonably incidental to his work." *Id.*

In this case, Claimant had completed his personal errand and returned to the industrial complex but found that the area in which he had been instructed to park was blocked by a delivery vehicle. In compliance with the directions of his employer as to where he was to park, Claimant did not attempt to park in another area but proceeded instead to the main parking area in order to turn around and wait for the delivery vehicle to move. Powdered Coatings' president testified that brief stops by delivery vehicles were not uncommon and that access to the designated spaces would be blocked during those periods.

■ Having instructed employees where to park with knowledge that the way could periodically be blocked by vehicles delivering parcels necessary to its business operations, Powdered Coatings could readily anticipate that it might be necessary for employees to make a brief detour until the designated area was clear. Because the detour was necessitated by employer's instructions as to where to park and activities necessary to its business operations, there is a causal connection between the conditions under which work was to be performed and the resulting injury. Thus, the injury may properly be characterized as arising "out of" employment.

■ Likewise, the injury occurred while employee was attempting to comply with employer's instructions about parking and was thus engaged in an activity incidental to his employment. The route taken by Claimant was logical under the circumstances. Thus, the injury occurred at a place where the employee could reasonably be in attempting to comply with employer's directives. Therefore, the injury also arose "in the course" of employment and the statutory requirements for recovery are satisfied.

Accordingly, the Commission's order denying compensation is reversed and the cause is remanded for entry of an appropriate award of compensation.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.