**Kevin ROBERTS, Employee–Respondent,**

**v.**

**PARKER–BANKS CHEVROLET, Employer–Appellant,**

**and**

**Mada Workers' Compensation Fund, Insurer–Appellant.**

**No. ED 79089.**

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 9, 2001.

George T. Floros, Evans & Dixon, St. Louis, MO, for appellants.

Kenneth A. Seufert, Farmington, MO, for respondent.

RICHARD B. TEITELMAN, Judge.

Parker–Banks Chevrolet ("Employer") appeals from a decision of the Labor and Industrial Relations Commission awarding worker's compensation benefits to Kevin Roberts ("Claimant") for an injury he sustained while going to work, when he tripped and fell in a public parking lot near his place of employment. Employer argues on appeal that the Commission erred as a matter of law, and misapplied the extended premises doctrine, when it held that Claimant's injury arose out of and in the course of employment. We affirm.

### Factual and Procedural Background

Employer is a car dealership located on South Main Street in Fredericktown, Missouri. Claimant worked for Employer as an auto detailer. While routinely parking and exiting his vehicle in a City parking lot (hereinafter, "the City parking lot") on the way to work on May 12, 1997, Claimant accidentally tripped on a drain pipe, injuring his right knee. The City parking lot is located behind the premises directly across Main Street from Employer's business premises, approximately 100 feet down a 12–foot–wide alley.

Claimant filed a claim seeking worker's compensation benefits for his injury. After a hearing, the Administrative Law Judge awarded Claimant benefits including past medical expenses, six weeks of total temporary disability, and 22½% permanent partial disability of Claimant's right leg at the knee.

All of the witnesses who testified at the hearing agreed that Employer had a parking problem. Due to its crowded "downtown" location, limited space and volume of vehicle sales, there was a lack of sufficient parking space available for both new cars and customers. As a result, Employer instituted a policy prohibiting employees from parking anywhere on the business premises or in front of the business on Main Street.

The evidence further indicated that parking anywhere on Main Street was not practical for employees, since there was a two-hour parking limit under local ordinance which was actively enforced by the police. Other than a very few parking spaces located behind the dealership or behind an adjacent building that housed a title insurance company, all witnesses agreed that the closest and by far the most convenient place for the dealership's employees to park was the City parking lot. Employer had about thirty (30) employees, and most of them——including all of the mechanics, parts managers, and service workers——used the City parking lot. Employer testified that there were two other city-owned lots that the employees could have used. However, those lots were much further away from Employer's business premises, and all of the witnesses agreed that none of Employer's employees parked on either of the other two lots.

The City parking lot was free, was open to the general public, and had no time limits on parking. Employer did not have an ownership interest in the lot or any leasing agreement with the city for any parking spaces there. Employer did not maintain or repair the lot; nor were there any signs on the lot indicating that any spaces were reserved for its employees, and there was no arrangement with the city to ensure that any spaces in the lot were set aside for its employees.

The only significant factual difference between the testimony of Employee's witnesses and Employer's witnesses concerned the precise nature of the parking instructions given to employees regarding use of the City parking lot. Claimant and a fellow co-worker who testified on his behalf stated that they were specifically told to park there. Claimant and the co-worker both testified that they were instructed on numerous occasions, both by the dealership's owner and general manager, Mr. Banks, as well as by its service manager, Mr. Blumenstock, that (a) they were not to park on the auto dealership premises; (b) they were not to park on Main Street in front of the premises, and (c) they were to park on the City parking lot. Both Mr. Banks and Mr. Blumenstock, however, denied that employees had been specifically instructed to park on the City parking lot, claiming that employees were merely told to park anyplace else other than the car dealership premises or

on Main Street in front of the premises. During their cross-examination, however, both Mr. Banks and Mr. Blumenstock, while still maintaining that they never specifically "instructed" employees to park on the City parking lot, admitted that they may have "suggested" or "recommended" to their employees that they park there. There was testimony that Employer's parking policy was repeatedly stressed to employees at monthly meetings that all employees were required to attend. Both Claimant and the co-worker also testified to an incident they witnessed where a fellow employee was openly reprimanded for parking on the dealership premises, and told to "follow the rules" like the other employees and park on the City parking lot. The Administrative Law Judge found, inter alia, that:

> [T]he service manager, Mr. Blumenstock, summarized the parking situation very succinctly by agreeing that if you take away the two or three parking places in the alley behind the business and a few spots north of the premises there is no place else for employees to park except for the street and the city lots. Mr. Blumenstock agreed that the street has a two hour limit and other city lots were too far away. [The City parking lot] was, therefore, really the only place left to park. Mr. Blumenstock agreed that is why most of the employees use [the City parking lot], and if a new employee asked where they should park, that is why they were told to park on [the City parking lot].

The Administrative Law Judge awarded compensation, finding that Claimant's injury arose out of and in the course of employment. Upon application for review by Employer, the Labor and Industrial Relations Commission affirmed the award. This appeal follows.

## Discussion

The issue on appeal is whether Claimant's injury arose out of and in the course of employment. Because compensability of the injury is a question of law, we review *de novo* the Commission's conclusions of law. *Wells v. Brown,* 33 S.W.3d 190, 191 (Mo. banc 2000). To the extent that the facts are in dispute, we view the evidence in the light most favorable to the Commission's award. *Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo. App. W.D.1995).

To be compensable under worker's compensation, an employee's injury must arise out of and in the course of his employment. *Wells,* 33 S.W.3d at 192. "Arising out of" and "in the course of" are two distinct tests, and both must be met before an injury is compensable. *Id.* Workers are not deemed to be in the course of their employment except when engaged "in or about" the premises where their duties are being performed, or where their services require their presence. *Id.;* § 287.020 RSMo.5, 2000. Generally, therefore, accidents which occur while an employee is traveling to or from work are not deemed to arise out of and in the course of employment. *Cox v. Tyson Foods, Inc.,* 920 S.W.2d 534, 535 (Mo. banc 1996), citing *Person v. Scullin Steel Co.,* 523 S.W.2d 801, 806 (Mo. banc 1975).

However, Missouri courts have long recognized an exception to the going to and coming from work rule, whereby injuries incurred while going or coming from work *are* compensable if they happen either on the employer's actual premises or "extended premises." Our courts have adopted this rule, set forth in *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 158, 48 S.Ct. 221, 222, 72 L.Ed. 507 (1928), when an employee is exposed to a hazard reasonably connected with his employment:

[E]mployment includes not only the actual doing of the work, but a reasonable margin of time and space to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, *or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,* the injury is one arising out of and in the course of employment as much as though it had happened while the employee was engaged in his work at the place of its performance. * * * Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer.

(emphasis added) See *Murphy v. Wells–Lamont–Smith Corporation,* 155 S.W.2d 284, 288–89 (Mo.App.1941); *Ott v. Consolidated Underwriters,* 311 S.W.2d 52, 56 (Mo.App.1958); *Kunce v. Junge Baking Co.,* 432 S.W.2d 602, 606 (Mo.App.1968); *Zahn v. Associated Dry Goods Corp.,* 655 S.W.2d 769, 773 (Mo.App. E.D.1983). Thus, we are called upon to determine whether, under the facts and circumstances of this case, the City parking lot may properly be deemed a part of Employer's extended premises.

 Under the extended premises doctrine, an employee's injury which occurs while going to or coming from work is compensable if:

(a) the injury-producing accident occurs on premises which are:

(1) owned or controlled by the employer, or

(2) not actually owned or controlled by the employer but which have been

(A) so appropriated by the employer or

(B) so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practical intents and purposes, a part and parcel of the employer's premises and operation; *and*

(b) that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workers to get to and depart from their places of labor and is being used for such purpose at the time of injury.

*Wells,* 33 S.W.3d at 192, citing *Cox v. Tyson Foods,* 920 S.W.2d at 535–536, and *Kunce v. Junge Baking Co.,* 432 S.W.2d at 607. If an employee is injured on his employer's extended premises while going to or coming from work, the injury happens in the course of employment as surely as if "it had happened while the employee was engaged in his work at the place of its performance." *Wells,* 33 S.W.3d at 193. Property is sufficiently "appropriated" to be considered an extension of an employer's premises where it is used by employees as a route of access to the employer's premises with the employer's knowledge and acquiescence. *Cox,* 920 S.W.2d at 536. An employer's conduct of inviting or encouraging its employees to park in a nearby lot satisfies the "design" criterion of the "situate, designed and used" part of the extended premises doctrine. *Id.; Wells,* 33 S.W.3d at 193.

As used in the context of parking lot cases, the extended premises doctrine has most recently been applied by the Supreme Court in *Cox* and *Wells.* In *Cox,* the claimant slipped and fell in a parking

lot which Tyson Foods did not own or control but which was the most conveniently located for the plant employees working near it; the employer invited the employees to use that lot; and the employees did use it. 920 S.W.2d at 535, 536. In *Wells* the employer was a dentist who leased space in an office building. 33 S.W.3d at 191. The claimant was not assigned a parking space or parking permit, and was not required to drive to work.. *Id.* at 192. The dentist did not own or control the building parking lot. *Id.* However, the parking lot was the only one near the office and the "most convenient place" for employees to park. *Id.* at 193. The dentist invited his employees to park there, but only on the lot's outer perimeter so as to save the limited closer parking space for his patients, and the employees did in fact so use the lot. *Id.* Under these circumstances, the court in both *Cox* and *Wells* found that the workers' injuries had occurred on their employers' "extended premises" and hence were compensable.

◼ In the case at bar, the basic facts are similar to both *Cox* and *Wells*. As in both of those cases, the parking lot in question here was the most convenient place for employees to park; to serve its needs and interests Employer not only invited but instructed its employees to park there; and most of the employees actually used the lot. We find that under the holdings of *Cox* and *Wells* these facts satisfy the "so situate, designed and used" portion of the extended premises doctrine. As in *Wells*, we further find that since the premises here are "so situate, designed and used" as to make them for all practical intents and purposes a part of the employ-

er's operation, we do not need to address the appropriation issue.[1]

◼ Employer urges us to find that this case is distinguishable from both *Cox* and *Wells* in at least two significant respects. First, Employer argues that unlike either of those cases, the evidence shows that it did not invite its employees to park on the alleged extended premises. Rather, Employer contends that, just as Mr. Banks and Mr. Blumenstock testified, the employees were simply told to park anywhere other than on the dealership premises or on Main Street in front of those premises, but were never specifically told to use the City parking lot. This argument ignores our standard of review. The Commission expressly found as a matter of fact, based on the testimony of Claimant and the supporting testimony of another witness who was an employee at Parker Banks Chevrolet, that, although parking there was not mandatory, Employer specifically "suggested, encouraged and even instructed its employees" to park on the City parking lot. In reviewing the Commission's decision, we view the evidence in the light most favorable to the award and uphold the decision if it is supported by competent and substantial evidence. *Gausling v. United Industries*, 998 S.W.2d 133, 135–36 (Mo.App. E.D.1999). We defer to the Commission on all issues as to credibility and the weight to be afforded conflicting testimony. *Moriarty v. City of Kirksville*, 975 S.W.2d 215, 219 (Mo.App. W.D.1998).

Additionally, Employer cites *Hafner v. A.G. Edwards & Sons*, 903 S.W.2d 197 (Mo.App. E.D.1995), in support of its position. In *Hafner* we held that the employer clearly did *not* consent to or acquiesce in

1. We nonetheless note that "appropriation" is closely linked to employees' actual *use* of nearby premises when done with the knowledge and acquiescence of the employer. See

*Hunt v. Allis–Chalmers Manufacturing Company*, 445 S.W.2d 400, 409 (Mo.App.1969). Cf. *Cox v. Quality Car Wash*, 449 A.2d 231, 232 (Del.1982).

employees' use of the particular off-site area where the claimant was injured, since the evidence showed that the employer had specifically designated an alternative area and installed special safety features in that area. *Hafner*, 903 S.W.2d at 200. *Hafner* is therefore crucially distinguishable from the case at bar, in which the facts show that the employer specifically invited and even instructed its employees to use the City parking lot, and thus clearly did acquiesce in the employees' use of that lot.

We conclude that Claimant's accident on the City parking lot meets the first prong of the *Wells* test for compensability under the extended premises doctrine. The second prong is also met, since all of the evidence indicates that the lot was part of the "customary, impliedly approved, permitted, usual and accepted route to work," and was being used by Claimant for that purpose at the time the injury occurred. *Wells*, 33 S.W.3d at 193.

Accordingly, we affirm the final award and decision of the Commission.

GARY M. GAERTNER, SR., J., concurs.

CLIFFORD H. AHRENS, J., concurs in result only.