**William DOWNS, Respondent,**

**v.**

**DURBIN CORPORATION, and United States Fidelity & Guaranty Co., Appellants.**

**No. 24552.**

Kansas City Court of Appeals,

Missouri.

Feb. 6, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1967.

Watson, Ess, Marshall & Enggas, Samuel J. Molby, Vincent E. Rawson, Clayton R. Smalley, Kansas City, for appellants.

Knipmeyer, McCann & Millett, William R. Fish, Kansas City, for respondent.

BLAIR, Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County affirming an award of $13,728.25 made by the Industrial Commission to William Downs against appellants, Durbin Corporation and United States Fidelity & Guaranty Co., its insurer. The single question presented by this appeal is whether the claimant's injuries arose out of and in the course of his employment.

Our review is limited to determining whether the commission could have reasonably based its award on the evidence before it. If there is competent and substantial evidence on which the commission bases an award and if it is not contrary to the law or clearly contrary to the overwhelming weight of the evidence, courts are bound to affirm it, and, in these circumstances, they have no authority to substitute their views for those of the commission on the credibility of the witnesses or to interfere with its action because it chose to believe the evidence supporting its award and rejected the evidence militating against it, even though reviewing courts might hold a different view on the record. Greer v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773, 778; Schmidt v. Rice-O'Neill Shoe Co., Mo.App., 226 S.W.2d 358, 362; Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623, 627. "The mere statement of the rule necessarily carries the implication of deference to the commission in respect to its findings on disputed questions of fact." Greer v. Missouri State Highway Department, supra; Smith v. Terminal Transfer Company, Mo.App., 372 S.W.2d 659, 661.

Appellants do not assert that the findings and award of the commission are clearly contrary to the overwhelming weight of the evidence and that question is not in this case. What they do assert is that the findings and award are not supported by competent and substantial evidence which meets the requirements of the legal theories applied by the commission. This leaves for our determination only the question whether competent and substantial evidence warrants the commission's finding that claimant's injuries arose out of and in the course of his employment and justifies the award it made under the law it deemed applicable. It ruled that its findings and award were supported by competent and substantial evidence under the dual purpose and mutual benefit doctrines. If competent and substantial evidence does support its findings and award under either doctrine, it will be unnecessary for us to determine whether its findings and award are supported under both doctrines. De-

termining the sufficiency of the evidence we must apply the familiar rule that requires us to look only to the evidence most favorable to the award, together with all reasonable inferences flowing from that evidence and tending to support the award, and to disregard all opposing and unfavorable evidence and inferences, even though an award by the commission to the contrary would have been supported by the evidence. Greer v. Missouri State Highway Commission, supra; Schmidt v. Rice-O'Neill Shoe Co., supra; Smith v. Terminal Transfer Co., supra. We first examine to determine whether the award is supported under the dual purpose doctrine.

Following the guidelines we have declared to be applicable on this review, we set forth the evidence relied on by the commission to support its findings and award under the dual purpose doctrine. The evidence is not complex. Checking the statements of facts in the briefs of the parties against the record we discover that both have been commendably fair in reciting the evidence for us. Virtually there is no disagreement about it. There is no dispute that the employer, Durbin Corporation, was under contract in the summer of 1960 with Crown Zellerbach Company to dismantle and remove from the premises of its Waxide Division at 20th and Tracy Streets, Kansas City, Missouri, all of its fixtures and equipment, as well as certain materials. Durbin Corporation maintained a crew of workmen at the Waxide Division which was supervised for it by Sam Dubinsky, its vice-president. Waxide Division had two employees present to supervise the operation for it.

The claimant was employed by Louis Durbin, President of Durbin Corporation, in early August of 1960 as a member of its crew of workmen at Waxide. His primary duty was operating an acetylene cutting torch in the dismantling of machinery, pipe and other materials located in the interior of Waxide. Claimant did not live in Kansas City. He lived in Sibley, Missouri. He owned a Ford truck. Daily he traveled in this truck from his home in Sibley and reported for work at the office of the Durbin Corporation, 10th and Hardesty Streets, Kansas City, at 8 A.M. He "punched" the time clock on arrival and then he and other employees loaded acetylene tanks on his truck and together they drove to Waxide some five miles distant. Claimant and his fellow employees normally would work at Waxide until 4–4:15 P.M. Then they would load on his truck any empty acetylene tanks and sometimes other materials and return them to the Durbin Corporation premises. Arriving at the premises they would unload and "punch out" on the time clock.

The Durbin Corporation gates were locked daily at 4:30 P.M. and if claimant, as occasionally happened, arrived at Durbin after that time he would be unable to enter the premises. His fellow employees would alight from the truck and go their separate ways. Then he would drive to his home in Sibley with the acetylene tanks and sometimes other materials still on his truck and he would return them to Durbin the next morning when he reported there for work at 8 A.M.

Claimant testified that he had no settled understanding as to what he would be paid by Durbin Corporation for transporting his fellow employees, the acetylene tanks and other materials in his truck, but he did testify that Louis Durbin the corporation's president, promised to compensate him for this service and from time to time would pay him money in discharge of this promise.

Claimant testified that three or four days before sustaining his injuries he asked Sam Dubinsky, Durbin Corporation's vice-president, to give him some of the lumber being removed from the Waxide premises. He was "building or planning to build on a room" at his home in Sibley. Sam Dubinsky told him he could have some of the lumber, but Louis Durbin, the Durbin Corporation's president, who held final authority over Durbin Corporation, countermanded the permission granted by Dubinsky and

told claimant that he could not have any of the lumber. Claimant testified he never took any of the lumber for his own purposes. "He (Louis Durbin) is the boss, and when he tells you something, that is it. Nobody changes Louis Durbin." On the date of the accident lumber was still being removed from the Waxide premises and that day it had been loaded on a number of small hand carts which were the property of Waxide. Dubinsky discovered that the carts were loaded with the lumber and that the Waxide employees would require their use for other purposes early the next morning. Shortly before quitting time, Dubinsky told claimant to unload the lumber from the hand carts, put it on his truck, take it to his home in Sibley and deliver it to the Durbin Corporation the next morning. Claimant agreed to do as Dubinsky directed. The record is clear that he did not have enough time to remove the lumber from the hand carts and load it on his truck and thereafter reach the Durbin Corporation in time "to punch out" on the time clock. Therefore, he first returned to the Durbin Corporation premises, punched out on the time clock, ate dinner, and then returned to the Waxide premises. With the assistance of two Crown Zellerbach employees he loaded the lumber, about 800 or 900 feet, on his truck and then he started his drive to his home in Sibley. However, he had driven only two blocks from the Waxide premises when his vehicle collided with another and he sustained his injuries.

There was other testimony that Durbin Corporation, under its contract with Crown Zellerbach, had the duty to dismantle and remove all "excess" equipment, fixtures and other materials from the Waxide premises, including lumber, which Crown Zellerbach elected not to retain for itself. The testimony and reasonable inferences are that the lumber Dubinsky directed claimant to load on his truck and to take to his home in Sibley and deliver to Durbin Corporation the next morning was lumber that Crown Zellerbach elected not to retain for itself and was lumber that Durbin Corporation was responsible for removing from the Waxide premises. If claimant had not removed this lumber from the Waxide premises that night, the Durbin employees would, in any event, have had to remove it from those premises at some later time.

■ There was some other evidence corroborating claimant's version of the facts. There was other evidence presented by appellants conflicting with claimant's version and supporting appellants' version that the lumber was actually given to him by Sam Dubinsky for his own use and that he was hauling it for his own personal purposes, and not for Durbin Corporation, at the time he sustained his injuries. We notice that Louis Durbin, Durbin Corporation's president, testified at the hearing before the referee. His testimony established beyond any doubt that Sam Dubinsky was still alive and still its vice-president. Dubinsky was not presented by appellants as a witness and no explanation was given for his absence. The failure of appellants to present him as a witness or to explain his absence authorized the commission to draw the inference that his testimony would have been contrary to their version of the facts and consistent with claimant's. Farr v. Manzella, Mo.App., 362 S.W.2d 752, 755; 12 Mo.Digest, Evidence, ■ ■

The commission, as the trier of the facts, chose to believe claimant's version of the facts. This it had the right to do. In these circumstances, as we have observed, we have no authority to substitute our views for those of the commission on the variances between the testimony of the different witnesses or to interfere with the action of the commission because it chose, on the aggregate evidence, to adopt the evidence it regarded as supporting its award and to reject the evidence militating against it, even though the record might lead us to rule differently if we were free to rule as we chose.

■ The general rule is that the hazards encountered by employees while going to or returning from their place of work, and before reaching or after leaving their place of work, are not ordinarily regarded as incident to their employment, and for this reason, injuries resulting from such hazards are in most instances held not to be compensable as injuries arising out of and in the course of their employment. However, this general rule is subject to some exceptions and one of them is the dual purpose doctrine. This doctrine has been adopted and applied in this state. Gingell v. Walters Contracting Corporation, Mo.App., 303 S.W.2d 683; Corp v. Joplin Cement Company, Mo., 337 S.W.2d 252; Kammeyer v. Board of Education, Mo.App., 393 S.W.2d 122.

In Gingell, decided by this court, the employee lived in Kansas City, Missouri. He was employed at an Air Force Base approximately 60 miles from Kansas City. On the day in question he drove from Kansas City to the Air Force Base and reported for work. It was raining and the employer's superintendent advised all employees that there would be no work that day and that they should report for work the following morning. The superintendent inquired if any employee was going to Kansas City. Gingell replied that he was and the superintendent asked him to "pick up some tarpaulins at Kansas City and bring them back the next day." Gingell said he would. At the same time another employee stated that he desired to return to New York that afternoon and asked Gingell if he would take his two bags to the airport in Kansas City and check them in his name. Gingell agreed to do this. While driving from the Air Force Base to Kansas City he met with an accident and sustained his injuries. We pointed out that it was "clear that Gingell had completed his regular employment at the Air Base; and that the contemplated return trip to his home in Kansas City would have been (solely) for his own convenience", except that he was to pick up the tarpaulins in Kansas City for return to the Air Base the next morning and to check the baggage of the employee.

We ruled that Gingell's injuries arose out of and in the course of his employment and were compensable under the dual purpose doctrine. We examined Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, opinion by Judge Cardozo, a landmark case on this doctrine, and we construed this doctrine, in the light of it, as our Supreme Court has construed it before and since. O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 100 S.W.2d 289, 293(5) and McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S.W.2d 43, 44; Corp v. Joplin Cement Co., Mo., 337 S.W.2d 252, 255.

Elaborating, we also said in Gingell "Some of the decisions have construed this doctrine to be applicable only when the *primary purpose* of the trip is on the employer's business, or sometimes referred to as the 'dominant purpose' test. Judge Cardozo used no such language. He said it was sufficient if the business motive was a *concurrent cause* of the trip. He then defined 'concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been cancelled. As we understand this formula, it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time*. It is enough that some one would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the business and personal motive to determine which is *dominant*." Of the language just quoted from Gingell, the Supreme Court later said "This is a sound exposition of the doctrine and is in keeping with the rule that the Workmen's Compensation Act should be

liberally construed to effectuate its purposes." Corp v. Joplin Cement Co., supra.

Concluding our discussion in Gingell, we said "We think this same formula is applicable when an employee, in the course of his normal journey to and from work, performs some *concurrent service* for his employer, and becomes an exception to the general rule excluding off-premises going-and-coming journeys—such as going from his home to his place of employment or returning therefrom to his home. The question then becomes: Was this mission of such character or importance that it would have necessitated a trip by some one if this employee had not been able or willing to handle it in combination with his homeward journey?" See also: Kammeyer v. Board of Education, Mo.App., 393 S.W.2d 122, 132.

■ Viewing the evidence and the reasonable inferences it warrants in the light most favorable to the claimant, we have no hesitancy in applying to this controversy as decisive the ruling we made in Gingell. The lumber claimant was hauling when he sustained his injuries would have had to be removed and hauled from the Waxide premises to the Durbin Corporation by some one at some time if claimant had not been able or willing to remove and transport it in combination with his homeward journey and his journey the next morning to Durbin Corporation. Sam Dubinsky, Durbin Corporation's vice-president, chose the time and selected the route for the transportation of the lumber from the Waxide premises to the Durbin Corporation. He chose to direct claimant, in the course of his normal journey home that night and to Durbin Corporation the next morning, to transport the lumber to Durbin Corporation. That claimant would have gone to his home in Sibley without this direction and done so solely for his own personal purposes is not material. What is material is that the direction given him by Dubinsky, and his undertaking to obey it, made the transportation of the lumber a "concurrent cause" of his journey and the performance of a "concurrent service" for his employer as ruled in Gingell. 1 Larson, Workmen's Compensation Law, Sec. 18.13. Accordingly, we hold that the commission's findings are supported by competent and substantial evidence and that its award is correctly based on the dual purpose doctrine. This renders it needless to examine whether its findings and award are sustainable under the mutual benefit doctrine. The authorities cited by appellants to sustain a contrary ruling entirely fail to do so.[1]

The judgment of the circuit court affirming the findings and award of the commission is affirmed.

All concur.

1. Barton v. Western Fireproofing Co., 326 S.W.2d 344 (Mo.Spr.App.1959); Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929); O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 100 S.W.2d 289 (Div.1, 1936); Gingell v. Walters Contracting Corp., 303 S.W.2d 683 (Mo., K.C. App.1957); 1 Larson, Workmen's Compensation Law, § 18.11 et seq.