114 N.J. Super. 537 (1971)
277 A.2d 422
RUTH BEGLEY, PETITIONER-RESPONDENT,
v.
INTERNATIONAL TERMINAL OPERATING CO., INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided May 6, 1971.
*539 Mr. Frederick Klaessig for petitioner.
Mr. Andrew Lawrie for respondent (Messrs. Lawrie, Jennings and Buggeln, attorneys).
WOOD, WILLIAM FILLMORE, J.C.C.
This is a workmen's compensation death action brought by decedent's widow, wherein there is very little, if any, dispute concerning the essential facts. On the other hand, the parties are in complete disagreement on the basic legal question, namely, whether the accident which caused the death arose out of and in the course of decedent's employment. More specifically, the question is whether, under the so-called going-and-coming rule, and under the exceptions thereto that are either established by precedent or justified by reason and fairness, the accident is compensable. With respect to exceptions to the general rule, this case presents a question that has never been decided in this State.
The judge of compensation decided the case in favor of petitioner and respondent appeals.
Decedent was employed by respondent as a pier superintendent at the Elizabethport Marine Terminal in the Port Newark area of Elizabeth. His duties were to supervise the loading and unloading of ships. He regularly worked five days a week, Mondays through Fridays. Normally he began work at about 8 A.M. and quit at about 5 or 6 P.M. However, at times, whenever there was in the terminal a vessel that required loading or unloading, he had to work as late as 9 P.M. His salary was $260 for the five-day week, regardless of the number of hours worked. On occasions he was called upon to work Saturdays or Sundays. Work on those days was considered overtime, and for this overtime work he was paid $35 a day, irrespective of whether he worked a full day or only a fraction thereof.
*540 Because decedent's duties necessitated his travelling frequently from place to place within the terminal area during the course of a day's work, and because of the substantial distances between the various places where he worked, it was established practice for him to use his own car for such travel. The only exception to that practice was when one of respondent's vehicles was available for his use, but respondent's vehicles were never available when there was a ship in the pier to be loaded or unloaded. There was such a ship in the pier, and consequently decedent actually used his car for employment purposes, on the date of the accident.
The evidence does not indicate that respondent actually required or ordered decedent to use his car. However, since, as above indicated, no other mode of transportation was available to him when there were ships in the terminal requiring his services as supervisor, the use of his own car at such times must have been, under the circumstances, a practical necessity. In any event, respondent compensated decedent for his car use at the rate of 12 cents a mile, thereby indicating that it recognized and accepted such use as being substantially beneficial to its enterprise. Moreover, decedent's immediate supervisor, appearing as a witness for respondent, testified that, although decedent could perform his duties without a car, to do so "would cause a very slow process"; and respondent's general operating manager, likewise appearing as respondent's witness, conceded that decedent's use of his car was "productive." The compensation did not include the distance travelled to and from decedent's home (which was in Staten Island, New York) to the terminal.
Decedent's death was caused by a collision of his car with an item of road construction machinery known as a backhoe or crane. The accident occurred on a public street on Saturday, January 27, 1968, at about 6:15 P.M., shortly after decedent had left his place of employment and while he was apparently on his way home. It was dark and the backhoe was parked on or near the street without adequate lighting or sufficient barricade.
*541 Under these circumstances, the accident is not compensable unless it comes within an exception to the general rule that Workmen's Compensation Act benefits are not payable for accidental injury or death occurring while the employee is in the process of travelling between his home and his place of employment. Morris v. Hermann Forwarding Co., 18 N.J. 195 (1955).
One long-recognized exception to the above rule allows compensation in cases where the employer pays for or otherwise provides transportation between the home and the employment site. However, under this exception, as illustrated by Morris, where the employer provides transportation only during the time and in the area of actual employment, and/or only for a portion of the distance between the employment area and the employee's home, workmen's compensation liability ceases at the point where the employer-provided transportation terminates.
In Morris decedent lived in New Brunswick in Middlesex County, New Jersey, and worked as a travelling salesman. His sales areas were New York City and the New Jersey Counties of Bergen, Hudson and Essex. His employer paid all of his travelling expenses within those areas and also paid his train fare between those areas and New Brunswick. The accident occurred while decedent, after having completed his day's work and returned to New Brunswick by train, was on his way from the train station to his home. Although decedent used a bus to go from the station to a point within the vicinity of his home, his bus fare was not paid by his employer. The court held that the accident was not compensable since decedent left the scope of his employment when he departed from the station.
In so far as the employer's payment for transportation is concerned, the facts in the present case are strikingly similar to Morris. In both cases decedent had, at the time of the accident, gone beyond the point to which or the area within which the employer provided transportation.
*542 Petitioner took the position that in the present case the employer did pay for transportation from the place of employment to decedent's home. To support her position she relied upon the fact that decedent's immediate superior referred to the $35 a day payable for work on Saturdays or Sundays as "expense money" or money that covered the "normal expenses for coming to and from work and incidentals." While at first blush petitioner's view might appear to have some merit, it must, upon critical analysis, be rejected since it rests too heavily upon semantics. To accept her view would mean that the right to workmen's compensation would depend upon the particular term used to describe a general payment by an employer to an employee for the latter's services. Moreover, while decedent and his immediate superior may have referred to the per diem payment for Saturdays and Sundays as expense money, the testimony of the general operating manager indicates that this term was not used or authorized by respondent itself. It follows that the payment-for-transportation exception to the general rule does not help petitioner's cause.
Petitioner also stressed the facts that decedent worked irregular hours and that there was no convenient public transportation for him to use to travel from his home to the place of employment and she contended that these circumstances are an appropriate basis for another exception to the going-and-coming rule in cases where injury or death arises out of the employee's use of his own car or other private transportation. However, in these days when many large industrial employers are rapidly moving from the larger cities to suburbs or other areas where there is little or no public transportation, and when needed public transportation even to and within the larger cities is diminishing, to accept petitioner's contention, under the circumstances of this case, would eventually lead to an almost complete elimination of the going-and-coming rule. Elimination of the rule might be a good idea in any event (see Hammond v. Great Atlantic & Pacific Tea Co., 56 N.J. 7 (1970)), but of course this *543 court, being at the trial level, has no authority to overrule long-established and widespread precedents of the appellate courts.
O'Reilly v. Roberto Homes, Inc., 31 N.J. Super. 387 (App. Div. 1954), cited by petitioner as precedent for an exception to the general rule in situations where an employee uses his own car because public transportation is not readily available, does not rest upon such an exception at all. In that case it appeared that decedent was actually paid on an hourly basis for the time needed for travelling between his home and his place of employment site. Although reference was there made to the fact that the decedent had to travel during odd hours "when bus transportation was unlikely or at best round about travel," the court's decision actually rested upon an inference that, since decedent was paid at a three-hour rate when his duties and travel required no more than about an hour and a half, the use of his automobile "was part of the arrangement for which he was compensated." Thus, O'Reilly is nothing more than another example of the application of the payment-for-transportation exception.
Although petitioner's contention that this case falls within the payment-for-transportation exception to the going-and-coming rule, and her contention that there is or should be an exception to that rule in cases of accidents arising out of an employee's use of his own car to get to and from work when public transportation is not available or convenient, have both been rejected, she is nevertheless entitled to a compensation award. Her right to compensation rests upon the principle that whenever an employee, because of contract, necessity, express permission or established and accepted practice, uses his car regularly or frequently in connection with his employment and for the employer's benefit, he is within the scope of his employment when transporting the car to and from the place of employment in order to have it available for such use. While I have found no clear New Jersey precedents for this principle, it is supported by reason and fairness and is consistent with current *544 trends toward increasingly liberal construction of our Workmen's Compensation Act. See Hammond v. Great Atlantic & Pacific Tea Co., supra. The principle is also supported by precedents in other states. Borak v. H.E. Westerman Lumber Co., 239 Minn. 327, 58 N.W.2d 567 (Minn. Sup. Ct. 1953); Pittsburgh Testing Laboratories v. Kiel, 130 Ind. App. 598, 167 N.E.2d 604, 607 (Ind. App. Ct. 1960).
Furthermore, the principle herein announced is not without significant judicial support in this State. Cf. Demerest v. Guild, 114 N.J.L. 472 (E. & A. 1935). That was a negligence case involving a question identical to the one presented here, namely, whether the employee was in the course of employment at the time of an accident occurring while the employee was on the way home. The employee, defendant Edith Guild, lived in Dunellen and worked for co-defendant Metropolitan Life Insurance Company as a visiting nurse in the area of Union City, where the offices of the company were located. She had to use her car in connection with her work. The accident occurred after Mrs. Guild had finished work and had arrived at a point on her way home that was much nearer her home than it was to her employment area. Although the Company paid Mrs. Guild $20 a month for use of her car, the court decided the case on the assumption that this payment was for use of the car only in the employment area. This assumption (which appears to be correct) makes that case factually similar to the one here present. In reversing the trial judge's directed verdict in favor of Metropolitan on the ground of lack of agency between Mrs. Guild and that company at the time of the accident, the court stated:
In order to get the car to the district in which she worked it was necessary for her [defendant Guild] to drive it from her home to the Union City district where she was employed. It seems to us that this use of the car in driving from her home to the district where she was employed and after her duties in the district had been performed in driving the car back to her home was for the benefit not only of Mrs. Guild but also of the company which employed her. [at 475-476]
*545 Decedent's use of his car in connection with respondent's business was not merely casual or incidental. On the contrary, it was both frequent and substantial. At times the car was so used for as much as 200 to 500 miles a month.
The decision of the judge of compensation is affirmed.