Paula J. Moore DELOZIER, et al., Plaintiffs-Respondents,

v.

MUNLAKE CONSTRUCTION COMPANY, et al., Defendants-Appellants.

No. 12876.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 8, 1983.

Motion for Rehearing and to Transfer Denied Aug. 30, 1983.

Raymond E. Whiteaker, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Harold J. Maddox, Kansas City, for defendants-appellants.

John C. Milholland, Harrisonville, George R. Lilleston, Clinton, for plaintiffs-respondents.

MAUS, Presiding Judge.

An Administrative Law Judge awarded death benefits under the Missouri Worker's Compensation Act to the widow and surviving minor child of Jimmy Lee Moore. Upon appeal of the Munlake Construction Company and Royal Insurance Company (the Employer), the Labor and Industrial Commission entered a final award in favor of the dependents. As the accidental death occurred before August 13, 1980, the Employer's appeal was to the Circuit Court of St. Clair County. § 287.490, RSMo 1980. That court affirmed the final award. On this appeal, the Employer's basic claim of error is founded upon the general rule that an accident occurring while an employee is going to or coming from work is not compensable. The dependents contend the circumstances fall within one or more of the recognized exceptions to that general rule.

■ The resolution of the Employer's appeal is whether or not there is competent and substantial evidence to support the determination of the Commission. *Missouri Department of Social Services v. Blatter*, 655 S.W.2d 819 (Mo.App.1983). In support of its position, the Employer recites and repeats evidence conflicting with evidence that supports the award. It cites as conclusive declarations of its general manager and superintendent concerning limitations of the authority of Eutus Neel. The Employer also heavily relies upon inferences from the evidence contrary to the award. However, this court must view the evidence in its entirety and all legitimate inferences reasonably arising therefrom, most favorably to the final award. *Nichols v. Fruin-Colon Construction Co.*, 641 S.W.2d 149 (Mo.App.1982). When the record is so considered, the evidence supports the following salient facts.

The Employer is a construction company. During the period in question, it was engaged in constructing roads at seven different job sites in the Vernon and Bates County area. A bridge was also to be constructed at one site. The project office was a trailer located at one of the job sites near Prairie City in Bates County. The work was in the charge of a project superintendent.

In the absence of special instructions, all hourly employees were required to "clock in" at the project office. Normal working hours were from 8:00 a.m. to 4:30 p.m. From the project office, the employees dispersed to their work assignments throughout the area. Employees were paid from the time they clocked in.

In November, 1979, Eutus Neel was hired to assist the project superintendent in quality control and as a surveyor. A letter written on behalf of the Employer to Neel, a copy of which was sent to the Corps of Engineers, includes the statement "It is

your responsibility to act in the absence of the Project Superintendent, Jim Dickerson, and to act in conjunction with Mr. Dickerson in seeing that all work performed on the above-captioned project is in strict compliance with the plans and specifications." Upon authorization by the project superintendent, Neel hired Moore. Moore's primary duty was to assist Neel. When not so engaged, Moore was authorized to work as a laborer. When Moore was working under him, Neel fixes his work assignments and his hours. Time records demonstrate Moore spent the great majority of his time assisting Neel. Those time records show Moore did work some irregular hours, including overtime. The project superintendent reviewed these time cards. No one connected with the Employer questioned the hours of work.

The employee lived near Coal, east of Clinton. This was some distance north and east of the project office. Neel lived in Polk County, generally south and east of the project office. Customarily, Neel and Moore met at a cafe north of Osceola. Before Moore bought his motorcycle, the two alternated in driving to the project office. After Moore bought his motorcycle, he rode from the cafe to the project office with Neel.

The Employer bought concrete from a batch plant near El Dorado Springs. The concrete had to meet the plans and specifications of the Corps of Engineers. The proportions of water and other ingredients such as sand and cement could vary according to the moisture content of the aggregate. A representative of the Employer was required to supervise or witness the preparation of the concrete at the plant.

Prior to the day in question, Neel supervised the preparation of the concrete. However, Moore on occasion had accompanied Neel. On June 30, 1980, Neel learned that concrete was to be poured on July 1, 1980. The concrete was to be prepared early because of the heat. It was to "batch out" between 7:15 and 7:30 a.m. Neel instructed Moore to report to the batch plant the next morning not later than 7:30. He told Moore that he would start his time "½ hour earlier, which would have been approximately 7:00 a.m. the next morning, to compensate for his gas." This would leave the one company vehicle available for the use of Neel in driving from the project office to the job site.

On July 1, 1980, Moore left home at approximately 6:00 a.m., one-half hour earlier than usual. He was riding his motorcycle. At approximately 7:00 a.m. he was in a fatal traffic accident. The accident occurred on Hwy. B, west of Osceola. This was a route by which Moore could reach the batch plant, although not the shortest route. Moore had in his billfold a piece of note paper upon which was written a formula for the preparation of the concrete, with other cryptic notations. The basic formula on the note paper was in the handwriting of Neel. The other notations were in the handwriting of Moore. Those notations included the phone number of the batch plant and "1½ mile e Papineville." This is the approximate location of one of the construction sites.

At approximately 9:00 a.m. that morning, Neel arrived at the job site. The project superintendent arrived about the same time. The superintendent said the batch plant called and reported no company representative was there. Neel then went to the batch plant in order that the required concrete could be prepared.

It could be concluded the formula was necessary for the preparation of the cement. Moore was performing a service much like the foreman who was taking blue prints to a job site in *Cox v. Copeland Brothers Construction Co.*, 589 S.W.2d 55 (Mo.App.1979).

██ It is the general rule accidents incurred while an employee is going to or coming from work are not compensable because they do not arise out of and in the course of employment. *Baldridge v. Inter-River Drainage District of Missouri*, 645 S.W.2d 139 (Mo.App.1983). However, as one of the recognized exceptions to that general rule, it has been declared: "But that rule is not applicable where the em-

ployee during that period performs a special task, service or errand in connection with his employment." *Daniels v. Krey Packing Company,* 346 S.W.2d 78, 83–84 (Mo.1961). Also see *Cowick v. Gibbs Beauty Supplies,* 430 S.W.2d 626 (Mo.App.1968); *Barton v. Western Fireproofing Company,* 326 S.W.2d 344 (Mo.App.1959); *Heaton v. Ferrell,* 325 S.W.2d 800 (Mo.App.1959). Such circumstances might be better characterized as causing a trip made in performing such a special task to be a part of the employment. See 1 Larson's Workmen's Compensation Law, § 16.10, and cases therein cited. Compare *Gingell v. Walters Contracting Corporation,* 303 S.W.2d 683 (Mo.App.1957), in which an employee was picking up luggage and tarpaulins on his way home; *Corp. v. Joplin Cement Company,* 337 S.W.2d 252 (Mo. banc 1960), in which an employee, during a weekend home, picked up materials to take to a job site; *Downs v. Durbin Corporation,* 416 S.W.2d 242 (Mo. App.1967), in which the employee was injured taking his employer's lumber home overnight. Also see *Begey v. Parkhill Trucking Co.,* 546 S.W.2d 529 (Mo.App. 1977); *Cowick v. Gibbs Beauty Supplies,* supra. The special task exception to the general rule is no less applicable because an employee is serving his own purpose. The "dual purpose doctrine" is firmly established in Missouri. *Corp. v. Joplin Cement Company,* supra; *Cox v. Copeland Bros. Const. Co.,* supra; *Downs v. Durbin Corporation,* supra. That doctrine is applicable to this case.

When Moore did not ride with Neel, he traveled from Coal to Hwy. A and then west and south to the project office. When he rode with Neel from the cafe just north of Osceola, they traveled on Hwy. B almost due west to the project office. Moore could have reached the batch plant by driving west on Hwy. B and then turning to the south on Hwy. E. His most direct route to the batch plant would have been south on Hwy. 13 to Osceola and then southwest on Hwy. 82. The difference in mileage is not great. Because the accident occurred on Hwy. B a short distance from Osceola, rather than on Hwy. 82, the Employer argues the evidence does not support a finding Moore was on his way to the batch plant.

There is evidence of the following facts. Neel instructed Moore to report at the batch plant no later than 7:30 a.m. Moore left home one-half hour earlier than customary to go to work. He was not on the route he customarily traveled when he was not riding with Neel. He was on an acceptable alternative route to the batch plant. There is no evidence to suggest that at approximately 7:00 a.m. he was on a personal deviation. He was expected at the batch plant. These facts provide a basis upon which the Commission could properly conclude Moore was on his way to the batch plant. It is not necessary to lengthen this opinion by considering if Moore's declaration to his wife that he was going to the batch plant was admissible as an exception to the hearsay rule. See *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892).

The plans and specifications required that the preparation of concrete be supervised by a representative of the Employer who had been approved by the Corps of Engineers. The letter referred to above had been written on behalf of the Employer for the purpose of designating Neel as such a representative. While Neel was not aware that such approval was required or had been given, he had been approved by the Corps. A similar letter was later written on behalf of the Employer designating Moore as such a representative. Because the dependents presented no evidence that such designation had been approved by the Corps, the Employer insists the evidence is insufficient to support the award.

The absence of evidence of such approval does not establish Moore was not on a special task for the Employer. Neel obviously believed Moore could accomplish that task. The evidence does not affirmatively establish that Moore could not have done so. Even if he could not have done so, that does not militate against Moore's purpose in making the trip.

The Employer's final contention is based upon the declarations of the general manager and one of the project superintendents that Neel had no authority to do anything but perform his own work. This testimony must be evaluated in the light of all the testimony. For example, the general manager of the Employer declared Neel had no authority to hire Moore, to add any time to any employee's time card or to set the hours of any employee. He was then asked, "Who did all these things?" In spite of the fact his office was in Sugar Creek and the company had several projects in progress, he replied, "Myself, as general manager." Further, he was asked if Neel and Moore went home when "they had no further work that they could do that day, it would save you money for them to go home?" He answered, "I am not in a position to answer that question." The individual who became superintendent in April 1980 did not testify.

The Employer did in fact recognize Moore as an employee. Neel did direct Moore's work activities, including overtime. Time records show Moore worked primarily in surveying and quality control and worked overtime. Those time records were scrutinized by the project superintendent. No objection was made to the work he performed or the hours of that work. Moore was paid by the Employer on the basis of those time records. There is evidence from which the Commission could have reasonably concluded Neel and Moore were acting in good faith. In considering testimony similar to that of the general manager and the project superintendent, the Supreme Court has declared: "This sort of testimony does not mitigate against the right and duty of Corp as an employee to follow the instructions of his foreman or immediate superior on the job. Ordinarily, an employee has a right to assume that he is authorized to act in accordance with the direction or command of his foreman or other superior employee under whom he is directly working." *Corp. v. Joplin Cement Company,* supra, at 256. Also see 99 C.J.S. Workmen's Compensation § 217, p. 718.

 The dependents seek an award for a frivolous appeal. Rule 84.19. The standards for condemning an appeal as frivolous have been stated. *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270 (Mo.App.1979); *Burks v. Beebe,* 578 S.W.2d 298 (Mo.App. 1979). The position of the appellants has been steadfast from initial hearing through this appeal. While their arguments were unfounded, the entire record does not demonstrate bad faith. The dependents cited no authority dealing with Neel's lack of express authority. The motion under Rule 84.16 is denied and the judgment is affirmed.

HOGAN and PREWITT, JJ., concur.