James C. McCLAIN,
Claimant–Appellant,

v.

The WELSH COMPANY, Employer and Home Insurance Co., Insurer, Respondents.

No. 53117.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 9, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1988.

Application to Transfer Denied
May 17, 1988.

---

James C. McClain, seeks judicial review of a decision of the Labor and Industrial Relations Commission on his claim for workers' compensation benefits under § 287.200, R.S.Mo.1986 as a result of permanent and total injuries sustained. The sole question of law to be resolved is whether the permanent and total injuries arose out of and in the course of his employment. We hold that appellant's injuries did not arise out of and in the course of employment and affirm the judgment of the trial court.

## II.

Viewing the facts most favorable to the decision of the Industrial Commission and the trial court, as we must, the following facts appear.

The Welsh Company manufactures baby carriages, buggies, strollers, high chairs and other items. It has plants both in St. Louis, Missouri and Trenton, Illinois. Since its inception the Welsh Company has been a family owned and operated business. The president, Albert David Welsh, takes an active part in running the company. The company, as part of its operation, had certain company vehicles available for executive and employee use to run errands and correct shipping and delivery errors in the shipping department. One is a tractor-trailer; the others were two Oldsmobiles and perhaps a station wagon.

The appellant, James C. McClain, an "excellent" employee, was employed by the company for nearly twenty-six years; the last fifteen of which he was in charge of the shipping department overseeing some six employees. Everyone agrees that McClain is a long-time, faithful employee. At the time he suffered his disabling injuries, he was earning $4.50 an hour. In addition to his supervisory responsibilities in the shipping department, although "there was no requirement that [McClain] have a vehicle of his own," McClain performed "some driving duties" for the company in his own Ford Club Wagon (van) which he purchased in 1972. As shipping supervisor, McClain's duties involved su-

Robert J. Keefe, St. Louis, for claimant-appellant.

Edward W. Warner, St. Louis, for respondents.

SIMEONE, Senior Judge.

## I.

This is a workers' compensation case of first impression in which the appellant,

pervising the employees in the shipping room, assuring that the correct products were shipped to the proper location, keeping track of inventory and correcting shipping errors. Ninety-eight or ninety-nine percent of McClain's duties involved his presence in the shipping department. The president said that "James was the one that either made us or broke us as far as getting the dollar volume out to the customers." On occasion, he would make pick-ups and deliveries of materials in Illinois. Sometimes he would drive the company's vehicle but at other times he would use his own Ford van. Two or three times a week, usually on his way home from work, he used his own van to make trips to the post office. Sometimes, he would make early morning pick-ups of parts or company supplies on his way to work.

At the hearing before the Administrative Law Judge, David Welsh testified that the bulk of McClain's pick-ups and deliveries consisted of trips to the post office; that there had always been a company car available had McClain chosen to use it. McClain testified that although Mr. Welsh offered the use of a company car to make deliveries, he preferred his own van because "I could drive the van better than I could the car, so I told him I'd rather use the van than the car." He also preferred his own van because the van had no hood so that "you look down at the street in front of you." The Administrative Law Judge found that the company did not "require" McClain to have a van or other vehicle as a condition of his employment, but "the company did not object to [McClain's] use of his own van for company errands when he first expressed a preference to do so or at any time thereafter."

On those occasions when McClain used his own van on company errands and business, he was paid overtime, was reimbursed for the expenses of gasoline, bridge tolls and parking, either from petty cash or the company allowed him to use its credit card. These expenses were treated as business expenses and deducted on the company's tax returns. In 1975 or 1976, while he owned the van, it appears that McClain approached the president indicat-

ing that he was having some financial problems. Mr. Welsh then arranged a plan whereby the company would pay one-half of McClain's liability insurance coverage on his van for six months and McClain would pay the other half for the other six months.

The vice president of the company testified that instead of increasing McClain's wages, "we assisted him on his auto insurance premiums. It was a way the company tried to assist him to meet financial obligations ... we could have [paid] Union Electric and say send us his gas or electric bills, but we took his insurance." McClain was the insured on the liability insurance policy, but the policy was kept in the accounting department of the company in a file labeled "Business Insurance." The premiums were deducted on the company's tax returns as business expenses. The payment was treated as "employee advances." Although McClain testified he "really didn't know how the insurance problem came up," he admitted that Mr. Welsh personally talked to him "about how he'd [Welsh] pay six months of your insurance and you pay the other six," because "you were always short of money." No other employee had this insurance arrangement. The six month payments were alternated.

Over the years, the Welsh Company aided other employees by paying legal fees, "buying trailers to live in, co-signing on notes, that type of thing."

Under these circumstances, on the morning of August 2, 1979, at about 6:20 a.m., while on his way to work in his own van and not on any special errand for the company, McClain was involved in a vehicular collision at the intersection of Washington and Spring Avenues near his home. McClain suffered a fracture of the cervical spine resulting in paralysis of his entire body.

Since August, 1979, the appellant, McClain, has required skilled, around-the-clock nursing care. Since his final discharge from the hospital and rehabilitation center, he has lived with his sister, a li-

censed practical nurse, who caringly performs nursing and many other services.

On June 26, 1980, McClain filed a claim for workers' compensation benefits with the "Division of Workmen's Compensation." In due time the company answered denying that McClain sustained accidental injury "arising out of and in the course of his employment." Through counsel, McClain filed for group medical insurance benefits with one company and sought uninsured motorist coverage proceeds from Farmer's Insurance Group. McClain was paid $10,000 uninsured motorist coverage. The employer, Welsh Company, later claimed a credit against any workers' compensation award in the amount of $10,000 paid to McClain under the van's uninsured motorist provisions of the Farmer's Insurance coverage.

The workers' compensation claim was heard periodically by the Administrative Law Judge from July through October, 1984. On December 10, 1984, the Administrative Law Judge made his findings of fact and rulings of law. His essential findings of fact were that McClain was a "valued" employee; that in addition to his supervisory responsibilities in the shipping department he performed "some driving duties for the Welsh Company." Occasionally he would drive the company's tractor-trailer to pick up or deliver company materials, but at other times he used his own van, and used his van to make trips to the post office for the company "several" times a week, usually on his way home from work. The Administrative Law Judge found that the employer did not "require" McClain to have a van as a condition of his employment, but the company did not object to his use of his own van for company errands when he first expressed a preference to do so or at anytime thereafter. He also found that the company provided gas money, paid him overtime and shared the liability insurance costs. The company did not pay for gas for driving to and from work. On the date of the injury, McClain was not running any errands for the company. The ruling of law was that:

the circumstances relating to claimant driving his personal vehicle to work on August 2, 1979, fail to bring him, at the time of his accidental injury, within any of the recognized exceptions to Missouri's general rule applicable to 'going-to-and-coming-from work' injuries. The employer's acquiescence in, and benefits derived from, claimant's use of his own vehicle to run company errands did not operate to make claimant's trip to work in his own vehicle work-related under the existing circumstances in which he (1) was not running any company errand en route, (2) was not returning any company materials to work, and (3) was neither required nor expected to bring his Ford van to work as a part of his employment agreement with the Welsh Company. I find that claimant's tragic accident injury on August 2, 1979 did not arise out of and in the course of his employment.

The Administrative Law Judge also found that if the injury were determined to have arisen out of and in the course of his employment, the employer and its insurer, Home Insurance Company, be "entitled to no credit for the $10,000 paid to claimant by Farmer's Insurance Group pursuant to the uninsured motorist's provision in the policy of insurance claimant had on his personal vehicle."

McClain appealed to the Labor and Industrial Relations Commission and, in a 2–1 ruling, one commissioner dissenting, the Commission affirmed the ruling of the Administrative Law Judge. Mr. McClain then appealed to the circuit court, and on March 20, 1987, the trial court affirmed the final award of the Commission. In proper time, appellant appealed to this court.

On appeal, appellant contends that while any number of exceptions to the "going and coming rule" may be applicable, he concentrates on two—that the trial court erred in affirming the Commission's decision because (1) under the circumstances the use of appellant's van was a "tool" regularly used in the business of the employer and therefore the recognized exception of "dual purpose" or "mutual benefit" applies, and (2) the acquiescence by the employer in the use of the employee's per-

sonal van gave rise to an "implied contract" between the employer and employee so that this use became a term and condition of employment, hence his injuries arose out of and in the scope of employment. Appellant contends, therefore, that the availability of and acquiesence in the use of his own van for making deliveries and pickups for the employer makes an injury, while using the van for the purpose of going to work, arise out of and in the course of employment.

Respondents contend that the circumstances do not show that appellant's injuries occurred during the course of employment.

Respondents have moved to dismiss the appeal for failure to follow Rule 84.04. We overrule the motion and proceed to the merits.

### III.

The sole question involved in this appeal is whether or not the appellant was within the course and scope of his employment at the time of the tragic accident. More specifically and narrowly stated, the issue presented is whether a long-time, faithful employee who, although not required to do so by the employer, uses his own motor vehicle to pick up and make deliveries of business items for the employer and picks up and delivers parcels to and from the post office, for which he is paid overtime, reimbursed for gasoline and other expenses, and one-half of his automobile liability insurance is paid by his employer, is entitled to workers' compensation benefits, when on his way to work in his own vehicle on no specific errand or business for the employer, he is permanently and totally disabled in an automobile collision.

Certain guiding principles control the resolution of this proceeding: (1) the burden is on the employee and claimant in a workers' compensation proceeding to prove the basis of his claim, and the first essential is that the claimant must prove that the injuries were the result of an accident which arose out of and in the course of his employment. Section 287.-120; *Vickery v. A.C.F. Industries, Incorporated,* 454 S.W.2d 620 (Mo.App.1970); *Garrett v. Industrial Commission,* 600 S.W.2d 516, 518–19 (Mo.App.1980); (2) injuries to an employee arise out of employment if they are a natural and reasonable incident thereof, and they are in the course of employment if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of employment. *Begey v. Parkhill Trucking Co.,* 546 S.W.2d 529 (Mo.App.1977); *Heaton v. Ferrell,* 325 S.W.2d 800, 803 (Mo.App.1959)—excellent discussion; (3) whether an injury arises out of and in the course of employment is ultimately a question of law. *Hunt v. Allis Chalmers Manufacturing Company,* 445 S.W.2d 400 (Mo.App.1969); *Kunce v. Junge Baking Company,* 432 S.W.2d 602, 606 (Mo.App.1968); *Garrett, supra,* 600 S.W.2d at 519; (4) review by an appellate court is governed by § 287.490 relating to a question of law and the decision of the Industrial Commission is not binding on this court. *Saxton v. St. Louis Stair Company,* 410 S.W.2d 369 (Mo.App.1966); (5) in reviewing the decision of the Commission, we look only to the evidence most favorable to the decision. *Downs v. Durbin Corporation,* 416 S.W.2d 242, 244 (Mo.App.1967); (6) a court will disturb an award of the Labor and Industrial Relations Commission only when it is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence, and all doubts are to be resolved in favor of coverage, but not to the extent of validating a claim which lacks an essential element of coverage. *Ellis v. Western Elec. Co.,* 664 S.W.2d 639, 641 (Mo.App.1984).

The great multitude of cases reveal a "continuing struggle" to reconcile these general principles with an endless variety of factual situations in which employees are injured in vehicular accidents associated with the duties of one's employment. The general, long-standing principle is that an employee does not suffer injury arising out of and in the course of employment if the employee is injured while going or journeying to or returning from the place of employment. Going to or returning from

employment is one of those essential conditions of employment that every worker must present oneself to perform duties at the assigned location for which he was hired and depart therefrom when the work day is ended. Going to or returning from employment is a personal act, akin to dressing, grooming and presenting oneself for work. *Person v. Scullin Steel Company,* 523 S.W.2d 801, 806 (Mo. banc 1975); *Kunce v. Junge Baking Company, supra,* 432 S.W.2d at 606; *Downs v. Durbin Corporation, supra,* 416 S.W.2d at 246; *Garbo v. P.M. Bruner Granitoid Co.,* 249 S.W.2d 477, 479 (Mo.App.1952); *Koder v. Tough,* 247 S.W.2d 876 (Mo.App.1952); *Cox v. Copeland Bros. Const. Co.,* 589 S.W.2d 55, 57 (Mo.App.1979); *Garrett, supra,* 600 S.W.2d at 519; *Baldridge v. Inter–River Drainage District of Missouri,* 645 S.W.2d 139 (Mo.App.1982); 82 Am.Jur.2d, *Workmen's Compensation,* § 255 at 43 (1976); *annot.,* 50 A.L.R.2d 366 (1956). In other words, a trip to or from one's place of work is merely an inevitable circumstance with which every employee is confronted and which ordinarily bears no immediate relation to the actual services to be performed.

If a worker is to do the task for which he is employed, he must of course present himself at his place of work at the appointed hour; and when his day's work is over, he is no longer subject to his employer's direction and control but is free to return to his home to do anything else that may happen to suit his own personal convenience.

*Garbo v. P.M. Bruner Granitoid Co., supra,* 249 S.W.2d at 479; *Heaton v. Ferrell, supra,* 325 S.W.2d at 803.

While this is the general rule, the principle may be modified by the particular facts, circumstances and situations resulting in various and varied exceptions in order to accommodate both the employer and the employee. Certain exceptions to the general rule have been clearly delineated by the courts which permit a worker to be entitled to compensation. There is no need to analyze each and every one in detail. Suffice it to say that the following exceptions have been recognized by our courts: (1) the "journey" exception authorizes compensation when an injury suffered by the employee occurs while the employee is traveling for the employer. *Reneau v. Bales Electric Company,* 303 S.W.2d 75 (Mo. 1957); *Griffin v. Doss,* 411 S.W.2d 649 (Mo.App.1967); *Ellis v. Western Elec. Co., supra,* 664 S.W.2d at 639; (2) the "conveyance exception" where the employer furnishes the employee with a vehicle or the employee uses his own vehicle and the employer pays expenses on it when used for business purposes. *Sanderson v. Producers Commission Ass'n,* 360 Mo. 571, 229 S.W.2d 563 (1950). *Cf. Garrett v. Industrial Commission, supra,* 600 S.W.2d at 516. However, the use of the vehicle to go to or return home after the work day serves no employment-related function so that no award of compensation is authorized. *Garbo v. P.M. Bruner Granitoid Co., supra,* 249 S.W.2d 477 (employee's own car); see *Ray v. Great Western Stage & Equip. Co.,* 413 S.W.2d 576 (Mo.App. 1967) (employer furnished automobile); *Corp v. Joplin Cement Company,* 337 S.W.2d 252 (Mo. banc 1960); (3) the "special task" exception whereby the employee performs a special task, service or errand in connection with his employment. In such cases compensation is awarded. *Delozier v. Munlake Const Co.,* 657 S.W.2d 53 (Mo.App.1983); *Daniels v. Krey Packing Company,* 346 S.W.2d 78, 83–84 (Mo. 1961); 1 A. Larson's *Workmen's Compensation Law,* § 16.10; (4) the exception which authorizes compensation where the duties of the employee entail travel away from the employer's business to obtain parts or supplies for employer. *Baldridge v. Inter–River Drain. Dist. of Mo., supra,* 645 S.W.2d at 140; *Miller v. Sleight and Hellmuth Ink Co.,* 436 S.W.2d 625, 628 (Mo.1969); *McCoy v. Simpson,* 346 Mo. 72, 139 S.W.2d 950, 952–53 (1940); 1 A. Larson, *supra,* § 25.00 (1979).

While appellant relies on these various exceptions, he concentrates on the "dual purpose" or "mutual benefit" and the "implied contract" exceptions to the basic principle. We conclude, however, that neither of these exceptions nor any of the others listed control the circumstances here.

The "dual purpose" or "mutual benefit" doctrine, often used interchangeably, [*Downs v. Durbin Corporation, supra,* 416 S.W.2d at 243] in effect is that if the work of the employee creates the necessity of travel, the employee is in the course of his employment and is entitled to compensation even though the employee is at the same time serving some purpose of his own. *Corp v. Joplin Cement Company, supra,* 337 S.W.2d at 252; *Sanderson v. Producers Commission Ass'n, supra,* 360 Mo. 571, 229 S.W.2d at 566–67; *Gingell v. Walters Construction Corporation,* 303 S.W.2d 683 (Mo.App.1957); *Downs v. Durbin Corporation, supra,* 416 S.W.2d at 242. To establish this doctrine the trier of fact must be able to infer that the journey would have been made even though the private purpose was absent. *Gingell, supra,* 303 S.W.2d at 688. This doctrine was first enunciated by Judge [later Justice] Cardozo in *Marks Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181, 183 (1929).[1]

The test espoused in *Marks Dependents v. Gray* and followed in *Gingell* is:

If the work of the employee creates the necessity for travel, he is in the course of his employment though he is serving at the same time some purpose of his own.... If, however, the work has no part in creating the necessity for the travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose though the busines errand was undone, the travel is then personal and personal the risk.

quoted in *Gingell, supra,* 303 S.W.2d at 688.

In *Cox v. Copeland Bros. Const. Co., supra,* 589 S.W.2d 55, the Western District held that this doctrine was applicable to a situation where a plumbing foreman was killed while enroute from his home to the jobsite when he was carrying plans and specifications which he had worked on and corrected on his own time.

Under this test and in these decisions, as well as others, benefits were awarded because the employee was engaged on a dual purpose, for the mutual benefit of both the employer and employee. Appellant contends that the use of his own vehicle to perform tasks and errands for the Welsh Company was a mutual benefit to both the employer and the employee because the van was being driven to the Welsh plant for company use. But it is undisputed and conceded that the appellant was not, at the time of the tragic vehicular collision, engaged in any business of the employer. Appellant himself testified that he was neither required or requested to bring his van to work. He was not on any "dual purpose" or mission for himself and his employer. He was going to work in his own vehicle. Although he used his own vehicle for special purposes for the employer during working hours, this use of his own vehicle at a time when he was going to work did not convert the circumstances into a dual purpose or mutual benefit for the employer and employee. None of the authorities in Missouri have held that the mere use of a personal vehicle, although used with the acquiescence of the employer, while on the way to work satisfies the dual purpose or mutual benefit exception. Under the circumstances we cannot hold that the dual purpose doctrine applies to this case. The acquiescence by Welsh Company in the use of McClain's vehicle for running errands did not make the van a company "tool" thereby creating a dual purpose for appellant's trip to work on the date of the injury. *Stokes v. Four States Broadcasters,* 300 S.W.2d 426, 430 (Mo. 1957). We therefore cannot conclude that

---

1. In *Corp v. Joplin, supra,* the employee was traveling to get his pay check and some building materials to take to a job site. Our Supreme Court held that the facts present the elements of the dual purpose doctrine. In *Gingell,* the employer's foreman requested the employee to pick up some tarpulins and bring them to the job sites. In *Downs,* the employee was directed to load his truck with lumber and take it home to deliver the next day; on his way to work he was injured; the injury was compensable; *Wamhoff v. Wagoner Electric Corp.,* 190 S.W.2d 915 (Mo. banc 1945); *cf. Palmer v. H.E. Miller Oldsmobile, Inc.,* 731 S.W.2d 389 (Mo.App.1987)—denied benefits because no dual purpose.

the Commission or the trial court erred in this regard.

Appellant places principal reliance upon a number of authorities which he contends supports his position that the use of his own vehicle to make business deliveries for the employer over a period of years, where the employer reimbursed him for expenses, paid him overtime, and paid one-half of the liability insurance costs, all with the acquiescence of the Welsh Company, ripened into a custom and practice rising to the level of an "implied contract" so that the use of his vehicle became a term of and part of his employment, and the injuries sustained therefore arose out of the course of his employment.

Appellant relies upon Professor Larson's treatise, [1 A. Larson, *supra*, § 17.50] which states that if the employee, as a part of his job, is required to bring with him his own car for use during his workday, the trip to and from work is by that fact alone embraced within the course of employment.

> The theory behind this rule is in part related to that of the employer-conveyance cases: the obligations of the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel which otherwise he would have the option of avoiding. But in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes.

1 A. Larson, *supra*, at 4–239–244.

Appellant also relies upon several outstate decisions including *County of Tulare*

v. *W.C.A.B.*, 170 Cal.App.3d 1247, 216 Cal. Rptr. 885 (1985). In that case a supervisory secretary for the County's Building and Planning Department used her personal vehicle to fulfill her job responsibilities. She was injured on her way to work in her own vehicle. The tasks she used her vehicle to perform were done primarily on an as needed, but regular, basis. When she used her vehicle she was reimbursed for mileage. The use of her personal vehicle was encouraged. Although she was not expressly required to use her car for the job, she was assigned tasks which necessitated the use of her own car. The supervisor was aware of her use of the car and approved reimbursement of expenses. The California court reasoned that

> Once an employee has impliedly agreed to accommodate the employer and use his own vehicle the employer can reasonably come to rely upon its use and expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment.... Under such a state of facts, ... the employee is performing services growing out of and incidental to his employment ... when he brings his car to work and makes it available for use on a regular basis. Accordingly, injuries suffered in the car while in transit to and from work are compensable.

*County of Tulare*, 216 Cal.Rptr. at 889.[2]

Professor Larson's treatise does not aid the appellant. The principle discussed there relates to circumstances where the employee is required to take his vehicle to his job for use in the service of the employer and the vehicle is used in work-connection. The evidence is substantial here that

**2.** Appellant also relies on *Begley v. International Terminal Operating Co.*, 114 N.J.Super. 537, 277 A.2d 422 (1971) and *Poinciana Village Const. Corp. v. Gallarano*, 424 So.2d 822 (Fla.App. 1982). *Begley* involved a situation where the employee, with knowledge of his employer used his own vehicle to get around the substantial distances between the places he was required to work, and it was an established practice for him to use his own car. There was no other mode of transportation available. In *Poinciana* the decision was based upon the fact that there was a contract with the employer to pay the employ-

ee $25.00 extra per week for the regular use of his automobile in the employer's service. In *Hinojosa v. Workers' Compensation Appeals Board*, 8 Cal.3d 150, 104 Cal.Rptr. 456, 465, 501 P.2d 1176, 1185 (1972) it is held that where the "use of an instrument of transportation is a requisite of employment" and the employer fails to provide transportation making it "necessary for the workers to supply their own on-the-job transportation," there is an implied agreement to use the personal vehicle. That is not the situation here.

McClain was not required to bring his car to work for use to run errands and go to the post office. Taking the evidence favorably to the decision of the Commission, this was McClain's preference.

The decisions relied upon are not controlling. *Tulare County* involved the situation where the employee used her personal vehicle to fulfill her job responsibilities under circumstances where the employer reasonably came to rely upon the use of her vehicle. Here McClain was not required to use his vehicle to fulfill his job responsibilities. We believe *Tulare County* is distinguishable in that the employer led the employee to believe that her vehicle was to be used in her employment. She was led to believe that she was to use her own vehicle in her work and then by acquiescence of the employer, the vehicle became a part of the employment agreement permitting compensation for injuries.

To adopt appellant's position would permit an employee who is not required to use his vehicle in his employment, but who uses it for his own preference to run errands for the employer, with the consent of the employer, and is injured on the way to work, would in effect allow an employee to recover compensation benefits while using his vehicle to or from work when on no particular errand or business for the employer. Such a principle would stretch the liberal concepts of workers' compensation beyond its legitimate purposes. The worker's compensation law is designed to compensate employees for injuries received in the course of and as a result of the employment relation and not to afford accident insurance wherever and whenever received. *Heath v. Ferrell, supra,* 325 S.W.2d at 806.

The crucial test of whether there is an implied contract in circumstances such as these is whether the employer, Welsh Company, by its actions, words and conduct would have led a reasonably prudent person in the position of the appellant to believe that, as a part of his employment, he was required to have his own vehicle available at work to make deliveries, pickups and go to the post office. If so, then there is an implied contract. A. Farnsworth,

*Contracts,* § 3.10 at 124 (1982). Having the vehicle at work to run errands would then become a requirement of McClain's employment. Under this crucial test, and under the facts and circumstances here, there was no implied contract. The Commission and the trial court properly so found. The appellant did not carry his burden of proof on that issue.

The out-of-state decisions relied upon by the appellant including *Tulare County* are distinguishable in that the facts show that in each case the employer led the employee to believe, that as a part of the employment, the employee was required to have his personal vehicle available. That is not the situation here.

Neither do any of the Missouri decisions relied upon by the appellant extend compensation to the ultimate urged by the appellant. None of the Missouri decisions go so far as appellant urges us to go; none of the Missouri decisions recognize an "implied contract" under the circumstances here. Even under the new concepts adopted in *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781 (Mo. banc 1983) and its progeny, the decision of the Industrial Commission is consistent with the essentials of the Workers' Compensation Act. We therefore conclude that the Commission's decision is consistent with law, supported by competent and substantial evidence and is reasonable. *Pulliam v. McDonnell Douglas Corp.,* 558 S.W.2d 693, 697 (Mo.App.1977).

■ We reject the appellant's contention that the use of his personal van to run errands, make pickups, and go to the post office gave rise to an "implied contract" that the use of the vehicle became a part of the employment so that an injury which occurs while going to work and on no specific business of the employer arises out of and in the course of employment. We hold, as did the officials below, that an employer's acquiescence in the use of the employee's vehicle did not operate to make the appellant's travel to or from work in his own van work-related when (1) the appellant was not engaged in any specific errand for the employer at the time of his collision

which caused his injuries, (2) he was not transporting any company materials to work, and (3) he was not required to bring his vehicle to work as a part of his employment agreement.[3]

This case here is akin to *Federal Insurance Company v. Horner,* 148 Ga.App. 15, 251 S.E.2d 26 (1978) where the Georgia court held that an employee who used his own vehicle to go to and from work was given gasoline when he went to the post office for the employer and was injured going to work was not entitled to compensation benefits.

The General Assembly might, at some future time, amend the law and adopt a rule to the effect that employees who sustain accidental injuries while on their way to and from work are entitled to workers' compensation benefits, but it has not done so to date. On the contrary, the present law plainly provides that the employer is responsible to furnish compensation only when the injuries arise out of and in the course of employment. Such is not the case here. *Rankin v. Girvin,* 231 S.W.2d 242, 247 (Mo.App.1950).

Appellant makes much of the fact that the Welsh Company paid for McClain's liability insurance on his own vehicle and that the employer deducted those payments as a business expense. This, appellant contends, shows that the employer regarded McClain's van as part of its business, hence when injured, McClain was engaged in the course of his employment.

It does not follow that the payments of the insurance premiums on McClain's van makes the vehicle a company vehicle, or makes it a "tool" which McClain took to work with him. There is some dispute in the record as to why such premiums were paid—whether as a company "largesse" to aid McClain with his finances or was a part of the business of the employer. The insurance premiums were paid over a number of years after McClain approached Welsh concerning financial problems. One

motive for the employer may well have been to cover or indemnify the company in case of a collision occurring while the van was being used on company errands. The payment of the premiums may well have been to accommodate McClain with his finances and aid him as it did other employees. Instead of paying his utility bills, the company paid insurance. The payment of the insurance premiums was not, as in some of the decisions, payment for the regular use of McClain's vehicle. Mr. Welsh testified that the insurance was paid to "save money" for McClain. The Commission impliedly found that the payment of the insurance premiums did not make the injuries sustained arise out of or in the course of his employment. We conclude that that finding was not erroneous.

As to the credit of $10,000 uninsured motorist coverage and the $22,590 paid for medical expenses by Great-Western Insurance Company, claimed by the employer, the Administrative Law Judge denied such credits to the employer and its insurer. This denial of credit was affirmed by the Commission and the trial court. We will not disturb that finding.

In conclusion, as sympathetic as we are to the appellant's plight, we reject the appellant's contentions that his injuries arose out of and in the course of his employment under the circumstances here.

The record supports the Commission's majority decision. Accordingly, the judgment of the circuit court is affirmed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.

---

**3.** Appellant's reliance on the decision of the Industrial Commission, *Carol Van Pool v. Tri–County Human Development,* Injury No. 84–130558 (1986) is misplaced. There the employer required the employee to use her personal vehicle. That decision is clearly distinguishable. *Griffin v. Doss, supra,* 411 S.W.2d at 649 is also distinguishable because the custom of providing the employee with transportation ripened into a part of the contract of employment.